RUBY BUIE PARRIS v. GARNER COMMERCIAL DISPOSAL, INC., WILLIAM D. KING, AND AETNA LIFE AND CASUALTY COMPANY, INC.

No. 7819SC416

(Filed 20 March 1979)

1. **Process §§ 13, 15— out-of-state insurance company—service of process on insurance commissioner insufficient—service of process on agent in Connecticut sufficient**

   Service of summons upon John Ingram, Commissioner of Insurance, as defendant insurance company's statutory process agent pursuant to G.S. 58-153 or G.S. 58-153.1(a) was ineffective, since defendant was not licensed to do business in this State and since defendant was not involved in suits by or on behalf of insureds or beneficiaries under insurance contracts in this State; however, plaintiff's service of process by serving alias and pluries summons on defendant's statutory agent for service of process in Connecticut was sufficient to apprise defendant that it was the party being sued and therefore was sufficient under G.S. 1A-1, Rule 4(j)(6), if the Court had jurisdiction over defendant.

2. **Process § 13; Constitutional Law § 24.7— out-of-state insurance company—minimum contacts**

   Defendant insurance company which was not licensed to do business in this State had sufficient "minimal contacts" with this State to justify the court's assertion of *in personam* jurisdiction over defendant where the evidence tended to show that defendant was listed in telephone directories in various N. C. cities; the directories indicated a toll-free number to call in Hartford, Connecticut in the event of an accident; the directories indicated general agents to contact within various N. C. cities; defendant or its agent had sent a letter to plaintiff's counsel regarding renewal of a term insurance policy; and an insurance policy was mailed to a named person in an envelope bearing defendant's tradename and a note was attached informing her to call defendant for immediate help in the event of an accident.

3. **Constitutional Law § 24.7— out-of-state insurance company—advertisement through independent agency—jurisdiction over insurer**

   In an action to recover for damages sustained in an automobile accident where plaintiff sought an injunction directing defendant's out-of-state liability insurance carrier from continuing advertisements in national magazines which, plaintiff alleged, amounted to massive jury tampering, there was no merit to the insurer's contention that assertion of jurisdiction over it was precluded because it placed its advertisements through an independent advertising agency.

APPEAL by plaintiff from *Seay, Judge.* Judgment entered 22 March 1978 in Superior Court, ROWAN County. Heard in the Court of Appeals 7 February 1979.

Parris v. Disposal, Inc.

Plaintiff was injured in a two car automobile accident on 15 November 1974. On 21 October 1977, she filed suit against defendant William D. King, the driver of the other vehicle, and Garner Commercial Disposal, Inc., owner of the vehicle. Plaintiff alleged defendant King negligently operated the car he was driving while in the scope of his employment with Garner Commercial Disposal, Inc.

On 18 November 1977, plaintiff amended her complaint and alleged that: Aetna Life and Casualty Company, Inc. has a pecuniary interest in the lawsuit as liability insurance carrier for defendant Garner Commercial Disposal, Inc.; Aetna Life and Casualty Company, Inc. was purposefully engaged in massive jury tampering through advertisements in the print media, Newsweek and Time Magazines; North Carolina laws prohibit all parties from imparting to the jury or prospective jurors the existence of or lack of insurance; and Aetna Life and Casualty Company, Inc. was aware of this prohibition. Plaintiff sought an injunction directing Aetna Life and Casualty Company, Inc. from continuing such advertisements.

The advertisements in question provided:

" 'When awarding damages in liability cases, the jury is cautioned to be fair and to bear in mind that money does not grow on trees. It must be paid through insurance premiums from uninvolved parties, such as yourselves.'

Too bad judges can't read this to a jury.

In a small Florida town, a decorative boulder rests on the median of a road. A man with three drinks in him and no sleep for 18 hours smashes his car headlong into it. *A jury orders the town to pay him $4.7 million in damages.*[1]

A truck without brake lights is hit from behind. For 'psychic damages' to the driver, because his pride was hurt when his wife had to work, *a jury awards $480,000 above and beyond his medical bills and wage losses.*

Then there's the one . . . but *you* can probably provide the next example. Most of us know hair-raising stories of

---

1. This case is being appealed by the town in addition to the court-awarded damages, two other defendants (the contractor and the county) settled out of court for an additional $1.15 million. This illustrates how extravagant jury-awarded damages set a standard for extravagant *out-of-court* settlements—the real problem, since most liability cases *are* settled out of court.

Parris v. Disposal, Inc.

windfall awards won in a court.[2] Justified claims should be compensated, of course. Aetna's point is that it is time to look hard at what windfall awards are costing.[3]

What can we do? Several things:

We can stop assessing 'liability' where there really *was* no fault—and express our sympathy for victims through other means.

We can ask juries to take into account a victim's *own* responsibility for his losses. And we can urge that awards realistically reflect the actual loss suffered—that they be a fair *compensation*, but not a reward.[4]

Insurers, lawyers, judges—each of us shares some blame for this mess. But it is you, the public, who can best begin to clean it up. Don't underestimate your own influence. Use it, as we are trying to use ours.

Aetna wants insurance to be affordable.

(tradename)

Aetna Life & Casualty.
151 Farmington Avenue.
Hartford, CT 06156"

Plaintiff served process on John Ingram, Commissioner of Insurance, as defendant's statutory process agent. Defendant filed a motion to dismiss on the grounds that it had no contacts sufficient to subject it to the court's jurisdiction and that service of process on John Ingram as its statutory agent was improper. Plaintiff then served process on defendant by alias and pluries summons by delivering it to defendant's statutory process agent in Connecticut.

---

2. A by-product of such awards has been a quantum leap in the number of all kinds of suits filed. Products liability cases *alone* have increased from 50,000 a year in the 1960's to almost a million a year now.

3. Most awards are paid by insurance, and insurance companies spend millions more defending policyholders against lawsuits. The direct result is rising premiums for automobile and other liability coverages. The *indirect* result is higher prices for goods and services—prices which are boosted to cover the skyrocketing insurance premiums of manufacturers, doctors, hospitals, and others who are targets for windfall awards.

4. For example, it would help if juries were simply required to take into account payments the claimant has already received for medical bills and lost wages. Under the present system, these bills may be paid all over again.

The alias and pluries summons stated:

"Ruby Buie Parris

Against

Garner Commercial Disposal, Inc., William
D. King, and Aenta Life and Casualty
Company, Inc."

The summons was directed to:

"William Oliver Bailey, President
Aetna Life and Casualty Company
151 Farrington Avenue.
Hartford, Connecticut 06156"

Defendant renewed its motion for dismissal on the foregoing grounds and on the ground that the alias and pluries summons was defective.

At a hearing on the motion to dismiss, defendant offered evidence in an affidavit tending to show that, "Aetna Life and Casualty Company is not licensed to do business in North Carolina." Defendant's further evidence indicated that it had not done business in North Carolina for the past five years; owned no real property in North Carolina; did not maintain a telephone within the State; had not engaged in litigation within the State in the past five years; and the advertisements in question were placed through and controlled by an independent contractor.

Plaintiff's evidence tended to show defendant had telephone listings in Charlotte, Greensboro, Raleigh, Salisbury, and Wilmington; the telephone listings indicated a toll-free number to call in Hartford, Connecticut; defendant had sent a letter to plaintiff's counsel regarding renewal of a term insurance policy; the letter was received in an envelope bearing defendant's tradename; an insurance policy was mailed to one Daphne Weems in an envelope bearing defendant's tradename and informing her to call defendant for immediate help in the event of an accident; and that approximately 800 issues of Time Magazine and 600 issues of Newsweek Magazine are received weekly in Salisbury and delivered to residents of Rowan County.

The trial court granted defendant's motion to dismiss on the grounds that defendant was not amenable to process in North Carolina and that the attempted service of process was void.

Plaintiff appealed.

*Burke, Donaldson & Holshouser, by Arthur J. Donaldson, for plaintiff appellant.*

*Jones, Hewson & Woolard, by Harry C. Hewson, for defendant appellee Aetna Life and Casualty Company, Inc.*

ERWIN, Judge.

Plaintiff contends that the trial court committed error in dismissing his complaint against defendant Aetna Life and Casualty Company, Inc. We agree with plaintiff.

[1]   Assuming *arguendo* that plaintiff's original service of summons on defendant was pursuant to G.S. 58-153 or G.S. 58-153.1, such service would be defective. To serve legal process under G.S. 58-153, an insurance company must be licensed or admitted and authorized to do business in this State. *See* G.S. 58-153.

G.S. 58-153.1(a) allows service of process on insurance companies subject to our courts' jurisdiction in suits by or on behalf of *insured* or *beneficiaries* under insurance contracts. *See* G.S. 58-153.1(a). Since neither circumstance prevails here, service or summons upon John Ingram, Commissioner of Insurance, as defendant's statutory process agent pursuant to G.S. 58-153 or G.S. 58-153.1(a) is ineffective. However, plaintiff's service of process by serving the alias and pluries summons on defendant was an effective service of summons.

G.S. 1A-1, Rule 4(d)(2) allows for the issuance of alias and pluries summons in the same manner as the original summons. Issuance of the original summons is to be in accordance with G.S. 1A-1, Rule 4(b).

G.S. 1A-1, Rule 4(b) provides:

"(b) *Summons—contents.*—The summons shall run in the name of the State and be dated and signed by the clerk, assistant clerk, or deputy clerk of the court in the county in which the action is commenced. It shall contain the title of the cause and the name of the court and county wherein the action has been commenced. It shall be directed to the

defendant or defendants and shall notify each defendant to appear and answer within 30 days after its service upon him and further that if he fails so to appear, the plaintiff will apply to the court for the relief demanded in the complaint. It shall set forth the name and address of plaintiff's attorney, or if there be none, the name and address of plaintiff."

The summons in question provides:

"Ruby Buie Parris

Against

Garner Commercial Disposal, Inc., William D. King, and Aetna Life and Casualty Company, Inc."

The summons was directed to:

"William Oliver Bailey, President
Aetna Life and Casualty Company
151 Farrington Avenue
Hartford, Connecticut 06156"

In *Wiles v. Construction Co.*, 295 N.C. 81, 84, 243 S.E. 2d 756, 758 (1978), our Supreme Court held a similarly directed service of summons a sufficient service of process:

"In the instant case, Welparnel Construction Company, Inc. was properly named as the defendant in the complaint, as well as in the caption of the summons. The sole ground upon which the process here is asserted to be defective is the direction of the summons to the corporation's registered agent rather than to the corporation. While our Rule 4(b) does require that the summons be directed to the defendant, we feel constrained to agree with the statement of Judge John J. Parker in a similar context that 'A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant, . . . it has fullfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else.' *United States v. A. H. Fischer Lumber Co.*, 162 F. 2d 872, 873 (4th Cir., 1947)."

The Court further noted:

"[W]e feel that the better rule in cases such as this is that when the name of the defendant is sufficiently stated in the caption of the summons and in the complaint, such that it is clear that the corporation, rather than the officer or agent receiving service, is the entity being sued, the summons, when properly served upon an officer, director or agent specified in the N.C.R. Civ. P. 4(j)(6), is adequate to bring the corporate defendant within the trial court's jurisdiction." (Citations omitted.)

*Id.* at 85, 243 S.E. 2d at 758 (1978).

The record shows that defendant's statutory agent for service of process in Connecticut was served with a copy of the summons. We hold that service of process was sufficient in this case to apprise defendant that it was the party being sued. Thus, if the court had jurisdiction over the defendant, the service of process was sufficient under G.S. 1A-1, Rule 4(j)(6).

The absence of proof of return on defendant's copy did not affect the validity of the service of process. The sheriff's return showing service was *prima facie* proof of service, *Harrington v. Rice*, 245 N.C. 640, 97 S.E. 2d 239 (1957), and *Lumber Co. v. Sewing Machine Corp.*, 233 N.C. 407, 64 S.E. 2d 415 (1951), and placed the burden on the party claiming that service had not in fact been made to repel the *prima facie* case. *Tyndall v. Homes*, 264 N.C. 467, 142 S.E. 2d 21 (1965); 10 Strong's N.C. Index 3d, Process, § 4, p. 395. It is the service of process and not the return of the officer which confers jurisdiction on the court. 10 Strong's N.C. Index 3d, Process, § 4, pp. 395-96.

The resolution of the question of *in personam* jurisdiction involves a two-fold determination: (1) do the statutes of North Carolina permit the courts of the jurisdiction to entertain this action against defendant, and (2) does the exercise of this power by the North Carolina courts violate due process of law. *Dillon v. Funding Corp.*, 291 N.C. 674, 231 S.E. 2d 629 (1977).

The grounds on which a court may assert personal jurisdiction over a person are set forth in G.S. 1-75.4.

G.S. 1-75.4(1)(d) provides:

"§ 1-75.4. *Personal jurisdiction, grounds for generally.*
—A court of this State having jurisdiction of the subject mat-
ter has jurisdiction over a person served in an action pur-
suant to Rule 4(j) of the Rules of Civil Procedure under any
of the following circumstances:

    (1) Local Presence or Status.—In any action, whether
    the claim arises within or without this State, in which
    a claim is asserted against a party who when service
    of process is made upon such party:

    . . .

    d. Is engaged in substantial activity within this
    State, whether such activity is wholly interstate,
    intrastate, or otherwise."

In the enactment of G.S. 1-75.4(1)(d), our Legislature intended to
make available to our courts the full jurisdictional powers per-
missible under federal due process. *Dillon v. Funding Corp.,
supra.* Thus, the essential question is: Does the exercise of *in per-
sonam* jurisdiction in the present case comport with due process?
We answer, "Yes."

Due process requires only that in order to subject a defend-
ant to a judgment *in personam,* if he be not present within the
territory of the forum, that he have certain minimal contacts with
it such that the maintenance of the suit does not offend the
"traditional notions of fair play and substantial justice." *Interna-
tional Shoe Co. v. Washington,* 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct.
154, 161 A.L.R. 1057 (1945); *Dillon v. Funding Corp., supra; Chad-
bourn, Inc. v. Katz,* 285 N.C. 700, 208 S.E. 2d 676 (1974).

Application of the minimum contacts rule varies with the
quality and nature of defendant's activities, but it is essential in
each case that there be some act by which the defendant pur-
posefully avails itself of the privilege of conducting activities
within the forum state, thus invoking the benefits and protections
of its laws. *Hanson v. Denckla,* 357 U.S. 235, 2 L.Ed. 2d 1283, 78
S.Ct. 1228 (1958); *Chadbourn, Inc. v. Katz, supra; Swenson v.
Thibaut,* 39 N.C. App. 77, 250 S.E. 2d 279 (1978).

[2]   The existence of minimal contacts is a question of fact. *Chad-
bourn, Inc. v. Katz, supra.* Here, the evidence shows: that defend-

ant was listed in telephone directories in various North Carolina cities; that the directories indicated a toll-free number to call in Hartford, Connecticut in the event of an accident; that the directories indicated general agents to contact within various North Carolina cities; that defendant or its agent had sent a letter to plaintiff's counsel regarding renewal of a term insurance policy; and that an insurance policy was mailed to Daphne Weems in an envelope bearing defendant's tradename and a note was attached informing her to call defendant for immediate help in the event of an accident. These contacts are not *"de minimis."* We hold that sufficient "minimal contacts" exist to justify the court's assertion of jurisdiction in the present case. *See Bard v. Steele*, 28 A.D. 2d 193, 283 N.Y.S. 2d 930 (1967).

[3] Defendant contends that assertion of jurisdiction over it is precluded, because it placed its advertisements through an independent advertising agency.

In *Putnam v. Publications*, 245 N.C. 432, 96 S.E. 2d 445 (1957), our Supreme Court held that our courts could not assert jurisdiction over the *publisher*, because no "minimal contacts" existed. Since we hold that sufficient contacts existed so as to assert jurisdiction over defendant, we find *Putnam v. Publications*, *supra*, distinguishable. However, we note that the reason courts refuse to uphold the exercise of jurisdiction over nonresident publishers is because of fear of undue burdens imposed upon multi-state publishers of defending suits in distant states when weighed against a need to provide plaintiffs with a convenient forum. Comment, Long Arm Jurisdiction Over Publishers: To Chill a Mocking Word, 67 Colum. L. Rev. 342 (1967). This same rationale is not applicable where foreign corporations launch massive campaigns seeking to influence jury verdicts in our State.

Courts generally exclude evidence of insurance, because it has no probative value on proving the two issues prevalent in every negligence case—negligence and damages. Lyerly, Evidence: Revealing the Existence of Defendants' Liability Insurance to the Jury, 6 Cum. L. Rev. 123 (1975). This is the rule in North Carolina. *Luttrell v. Hardin*, 193 N.C. 266, 136 S.E. 726 (1927); 1 Stansbury's N.C. Evidence (Brandis Rev.), § 88. Prevention of introduction of evidence is for the benefit of defendants

and their insurers. *See* 1 Stansbury's N. C. Evidence (Brandis Rev.), § 88. Thus, all insurers receive the benefit and protection of our laws, directly or indirectly.

Defendant would have us allow it the benefit and protection of our laws; but deny us the right to assert jurisdiction to prevent contravention of our laws. We may properly consider our legitimate interest in protecting our plaintiff residents' rights to have a jury reach a verdict free of outside influence. *See Byham v. House Corp.*, 265 N.C. 50, 143 S.E. 2d 225 (1965); *Swenson v. Thibaut*, 39 N.C. App. 77, 250 S.E. 2d 279 (1978). Traditional notions of fair play and substantial justice are not violated.

The order below is

Reversed and remanded for entry of order consistent with this opinion.

Judges MARTIN (Robert M.) and MITCHELL concur.