HIWASSEE STABLES, INC., GORDON S. CALHOUN AND TINA A. CALHOUN, PLAINTIFFS v. CHRIS CUNNINGHAM, D/B/A CHRIS CUNNINGHAM INSURANCE AGENCY, AMERICAN RELIABLE INSURANCE COMPANY, TEMPLETON & FRANKLIN VETERINARY ASSOCIATES, ZACHARY FRANKLIN, JAIRO ORTIZ, BLOOD HORSE DYNASTY, INC., FRANK L. DIAZ AS ATTORNEY-IN-FACT FOR JAIRO ORTIZ AND BLOOD HORSE DYNASTY, INC., FRANK L. DIAZ, P.A. JURIS DOCTOR AS ATTORNEY-IN-FACT FOR JAIRO ORTIZ AND BLOOD HORSE DYNASTY, INC. AND ENERGY EQUINE INSURANCE AGENCY, INC., DEFENDANTS

No. COA98-973

(Filed 21 September 1999)

**Jurisdiction— personal—motion to dismiss improperly denied—minimum contacts not satisfied**

The trial court erred by denying defendants' motion to dismiss for lack of personal jurisdiction since minimum contacts were not satisfied because: (1) plaintiffs made the initial contact with defendants in Florida; (2) the contract was performed in Florida; (3) none of the alleged acts of negligence occurred in this forum;(4) defendants never shipped anything to North Carolina beyond the one billing statement and fertility examination certificate form; (5) defendants never solicited business or advertised their services in North Carolina; and (6) while defendants have clients other than plaintiffs that now live in North Carolina, those individuals became clients while they resided in Florida and subsequently moved to North Carolina.

Judge JOHN dissents.

**HIWASSEE STABLES, INC. v. CUNNINGHAM**

[135 N.C. App. 24 (1999)]

Appeal by defendants Templeton and Franklin Veterinary Associates and Zachary Franklin from judgment entered 16 April 1998 by Judge Timothy L. Patti in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 May 1999.

*James, McElroy & Diehl, P.A., by William K. Diehl, Jr. and John R. Buric, for plaintiff-appellees.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Hatcher Kincheloe, Jennifer Ingram Mitchell and Holly L. Saunders, for defendant-appellants Templeton & Franklin Veterinary Associates and Zachary Franklin.*

HUNTER, Judge.

Defendants Templeton and Franklin Veterinary Associates ("TFVA") and Zachary Franklin appeal the trial court's denial of their motion to dismiss for lack of personal jurisdiction.

The evidence presented to the trial court indicates that plaintiffs Gordon Calhoun and Tina Calhoun are adult citizens and residents of Mecklenburg County, North Carolina. Plaintiff Hiwassee Stables, Inc. is a North Carolina corporation with its principal place of business in Mecklenburg County, North Carolina. In December 1995, plaintiffs contracted with Jairo Ortiz and Blood Horse Dynasty, Inc., a Florida resident and Florida corporation, respectively, to purchase a stallion named Nevado for the exclusive and disclosed purpose of using Nevado's semen, through artificial insemination, for a breeding business run in North Carolina. This lawsuit arose after plaintiffs were informed that Nevado's semen was not adequate for artificial insemination and that Nevado could not be used for the purpose for which he was purchased.

Before the purchase of Nevado was finalized, plaintiffs contacted defendant Chris Cunningham, d/b/a Chris Cunningham Insurance Agency ("Cunningham"), of Lincolnton, North Carolina, regarding insurance for Nevado. Plaintiffs presented evidence that Cunningham recommended to plaintiffs that they use TFVA to perform insurance, breeding soundness, and fertility exams, as she had recommended TFVA to her other North Carolina clients. Dr. Zachary Franklin and Dr. Richard Templeton are veterinarians who practice as TFVA, in Miami, Florida, and neither are licensed to practice veterinary medicine in North Carolina. The exams of Nevado were necessary to

determine whether he could be used for breeding and was eligible for insurance.

On 9 December 1995, plaintiff Tina Calhoun called TFVA in Florida requesting their services. Dr. Templeton returned the call to North Carolina and contracted with Ms. Calhoun, informing her that Dr. Franklin would perform the examination. Ms. Calhoun told Dr. Templeton that Nevado would be brought to North Carolina after he was purchased.

Cunningham and Tina Calhoun delivered to Dr. Franklin, in Florida, a fertility examination certificate form ("Form"). This Form was to be completed by the examining veterinarian and delivered to the insurance carrier to assist the insurer in determining whether Nevado could be covered by insurance. Dr. Franklin examined Nevado while he was in quarantine at Miami International Airport. Subsequently, TFVA completed the Form and delivered it to plaintiffs in North Carolina. Based on the results contained in the Form, Cunningham insured Nevado. When the horse was released from quarantine, it was transported by representatives for defendant Jairo Ortiz to the farm of his brother Edgar Ortiz in the Ocala, Florida area. Plaintiffs took possession of the horse at Edgar Ortiz's farm and transported it to North Carolina.

TFVA submitted a billing statement to plaintiffs in North Carolina charging them for services Dr. Franklin provided for plaintiffs in Miami. Plaintiffs paid TFVA for its services with a check drawn on a North Carolina account, which was mailed to defendants in Florida. Defendants cashed the check in Florida.

The evidence in the trial court also disclosed that in December 1995, Drs. Franklin and Templeton were both members of the American Association of Equine Practitioners ("AAEP"). The Equine Connection, an international locator service for AAEP members, placed advertisements in national and international equine publications, including *Practical Horseman* and *Horse Illustrated*, as well as on the Internet. Since before December 1995, plaintiffs received these national magazines at their home in North Carolina. While TFVA has approximately four clients that presently reside in North Carolina, those clients became associated with the defendants when they resided in Florida, and defendants have never performed veterinary services in this state.

Based on its findings of fact, the trial court concluded that the exercise of personal jurisdiction over the defendants is proper

because: (1) the contract entered into between plaintiffs and defendants has a "substantial connection" to this state; (2) solicitation activities were carried on within this state by or on behalf of defendants; (3) the money shipped by plaintiffs in North Carolina to defendants in Florida is considered a "thing of value" pursuant to N.C. Gen. Stat. § 1-75.4(5)(d) (1996); and (4) money was shipped to defendants from North Carolina on their order or direction.

The determination of whether jurisdiction is statutorily and constitutionally permissible due to contact with the forum is a question of fact. *See Chadbourn, Inc. v. Katz*, 285 N.C. 700, 208 S.E.2d 676 (1974); *Parris v. Disposal, Inc.*, 40 N.C. App. 282, 253 S.E.2d 29, *disc. review denied*, 297 N.C. 455, 256 S.E.2d 808 (1979). The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the lower court. *Better Business Forms, Inc. v. Davis*, 120 N.C. App. 498, 462 S.E.2d 832 (1995). When personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry—whether defendant has the minimum contacts with North Carolina necessary to meet the requirements of due process. *Murphy v. Glafenhein*, 110 N.C. App. 830, 431 S.E.2d 241, *disc. review denied*, 335 N.C. 176, 436 S.E.2d 382 (1993).

Plaintiffs assert that personal jurisdiction over defendants is proper under N.C. Gen. Stat. § 1-75.4(5)(d), which provides that such jurisdiction is proper, as to local services, goods, or contracts, in any action which "[r]elates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction." A money payment is a "thing of value" within the meaning of the long-arm statute. *Pope v. Pope*, 38 N.C. App. 328, 248 S.E.2d 260 (1978). In *Cherry Baekert & Holland v. Brown*, 99 N.C. App. 626, 394 S.E.2d 651 (1990), this Court held that "[b]ecause defendant directed plaintiff to send his monies to him in Alabama and plaintiff distributed the money from North Carolina," defendant was subject to personal jurisdiction pursuant to N.C. Gen. Stat. § 1-75.4(5)(d). *Id.* at 631, 394 S.E.2d at 655. It was irrelevant that defendant did not specify that payment be sent from this state. *Id.* Likewise, in the present case, defendants directed plaintiffs to send payment due them to Florida, and plaintiffs distributed the payment from North Carolina. Payment was sent from this state in the form of a check drawn on a bank in this state. Based on *Pope* and *Cherry*, we agree that personal jurisdiction is proper under N.C. Gen. Stat.

§ 1.74.4(5)(d); therefore, we need not address plaintiff's arguments regarding additional long-arm statutes. Our inquiry now turns to whether the exercise of personal jurisdiction satisfies the requirements of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

The Due Process Clause of the Fourteenth Amendment operates to limit the power of a state to assert *in personam* jurisdiction over a non-resident defendant. *Helicopteros, Nacionales v. Hall*, 466 U.S. 408, 413, 80 L. Ed. 2d 404, 410 (1984) (*citing Pennoyer v. Neff*, 95 U.S. 714, 24 L. Ed. 565 (1878)). In order for personal jurisdiction to exist, a sufficient connection between defendant and the forum state must be present so as to make it fair to require defense of the action in the forum state. *Kulko v. California Superior Court*, 436 U.S. 84, 91, 56 L. Ed. 2d 132, 141, *reh. denied*, 438 U.S. 908, 57 L. Ed. 2d 1150 (1978). The pivotal inquiry is whether the defendant has established "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940)). The factors used in determining the existence of minimum contacts include " '(1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties.' " *Cherry*, 99 N.C. App. at 632, 394 S.E.2d at 655-56 (*quoting New Bern Pool & Supply Co. v. Graubart*, 94 N.C. App. 619, 624, 381 S.E.2d 156, 159, *affirmed per curiam*, 326 N.C. 480, 390 S.E.2d 137 (1990)). To effectuate minimum contacts, a defendant must have acted to purposefully avail itself of the privileges of conducting activities within this state, thus invoking the benefits and protection of our laws. *International Shoe*, 326 U.S. at 319, 90 L. Ed. at 103. Additionally, the relationship between defendant and North Carolina must be such that defendant "should reasonably anticipate being haled into court" in this state. *Cherry*, 99 N.C. App. at 632, 394 S.E.2d at 656 (*quoting Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 786 (1986)). In considering the foreseeability of litigation, "the interests of, and fairness to, both the plaintiff and the defendant must be considered and weighed." *Dillon v. Funding Co.*, 291 N.C. 674, 678, 231 S.E.2d 629, 632 (1977). As the United States Supreme Court has explained, the

"purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random,"

"fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person . . . ." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 542 (1985) (citations omitted) (emphasis in original).

This Court has held that a continual contractual business relationship, rather than one or two isolated transactions, is sufficient to establish *in personam* jurisdiction. *Harrelson Rubber Co. v. Layne*, 69 N.C. App. 577, 317 S.E.2d 737 (1984). However, a single contract may be a sufficient basis for the exercise of *in personam* jurisdiction if it has a substantial connection to this state. *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 348 S.E.2d 782. Our Supreme Court held that a single contract had a substantial connection to North Carolina when (1) defendant contacted plaintiff, whom defendant knew to be located in North Carolina, thus the contract for the manufacture of shirts was made in North Carolina; (2) defendant was told the shirts would be cut in North Carolina, and defendant agreed to send its personal labels to plaintiff in North Carolina to be attached, thus defendant was aware that the contract would be performed in this state; and (3) shirts were manufactured and shipped from this state; and (4) after defendant became dissatisfied with the shirts, it returned them to this state. *Id.*

Unlike the circumstances in *Tom Togs*, the plaintiffs in the present case made the initial contact with defendants in Florida. The contract was performed in Florida, and none of the alleged acts of negligence occurred in this forum. Defendants did forward the Form and mailed a billing statement here, and subsequently received one thing shipped from this state—a check as payment for their services. Defendants never shipped anything to this state beyond the one billing statement.

In *Stallings v. Hahn*, 99 N.C. App. 213, 392 S.E.2d 632 (1990), this Court held that *in personam* jurisdiction could not be constitutionally exercised when defendant placed an advertisement for the sale of her car in a national monthly magazine distributed in this state, returned the call of plaintiff to North Carolina, plaintiff mailed a $200.00 cashier's check to defendant in Pennsylvania, and defendant subsequently returned the deposit check to plaintiff by mail to North Carolina. The present case is very similar to *Stallings*; however,

unlike *Stallings*, competent evidence does not support the findings of the trial court that advertisements were circulated and solicitation activities by or on behalf of the defendants were carried on within this state.

The evidence indicates that Cunningham testified that she never recommended TFVA to plaintiffs or solicited plaintiffs on TFVA's behalf. Drs. Templeton and Franklin testified that they had never solicited business or advertised their services in North Carolina. Under the name The Equine Connection, the advertisements at issue merely provide a telephone number for an individual to call if he or she wishes to obtain information about equine veterinarians in their area of the United States. Therefore, the advertisement does not advertise the defendants' services in this forum. As shown by the affidavit of Marv Jahde, the individual responsible for the advertisements, in order for the defendants to receive a referral, an individual must first initiate contact with The Equine Connection and then must request information about veterinarians in the Miami, Florida area. While plaintiff Gordon Calhoun testified that he was referred to TFVA upon calling The Equine Connection, he admitted that upon calling, he stated that he was moving to the Miami area. The referral letter at issue originated in Shawnee Mission, Kansas and was sent to Mr. Calhoun in North Carolina only because he specifically requested information about veterinarian services in the Miami, Florida area. Therefore, the letter did not amount to solicitation by or on behalf of defendants in this state.

Similarly, the VetQuest service at issue helps Internet users locate veterinary services. While a Web browser may inquire and obtain information about TFVA and other veterinarians on this Web site, no evidence indicated advertisements or solicitation by or on behalf of the defendants occurred therein. We note that Internet Web sites are, by nature, passive. They can only be browsed upon the instigation of the Internet user. While some "interactive" sites may result in direct communication and possible transactions between the Internet user and the Web site owner, no evidence indicated direct communication or transactions occurred between plaintiffs and defendants in the present case. In addition, the service in question did not go "on-line" until June of 1996 and was not available at the time plaintiffs contracted with these defendants for the performance of insurance examinations. Based on the foregoing, we hold that competent evidence does not support the findings by the trial court that defendants solicited or advertised in this state.

**HIWASSEE STABLES, INC. v. CUNNINGHAM**

[135 N.C. App. 24 (1999)]

While defendants have clients other than plaintiffs that now reside in North Carolina, those individuals became defendants' clients while they resided in Florida, and subsequently moved to this state. Defendants have only performed services for them in Florida, and have never performed veterinary services for anyone in North Carolina. While the convenience of plaintiffs would warrant this state as the appropriate forum, the convenience of defendants would warrant Florida as the appropriate forum. Additionally, defendants' business is located in Florida, the alleged negligent activity took place in Florida, and witnesses and evidence would be most easily discoverable in that forum.

It is uncontradicted that as the defendant in *Stallings*, the defendants in the present case returned the call of plaintiffs to North Carolina and entered into a contract with them, sent two communications (Form and billing statement) directed into this state, and received payment from North Carolina. However, the communication by the defendant in *Stallings* included not only the returned check, but also a direct advertisement in a magazine circulated within this state. We have previously held that defendants in the present case did not advertise or solicit their services in this forum. The record reveals no evidence that they purposely availed themselves of the privilege of conducting activities within this forum. Therefore, while the quantity is the same, the quality of defendants' contacts with this state is substantially less than those of the defendant in *Stallings*. This Court ruled that the defendant in *Stallings* was not subject to *in personam* jurisdiction. To render TFVA and Dr. Franklin subject to *in personam* jurisdiction would go against the precedent established by this Court in that case. Based on the foregoing, we hold that the contacts in this case do not rise to the level of satisfying the constitutional minimum under the Due Process Clause in order to justify the exercise of personal jurisdiction. Accordingly, the order of the trial court is reversed.

Reversed and remanded.

Judge TIMMONS-GOODSON concurs.

Judge JOHN dissents.

Judge JOHN dissents.

I respectfully dissent. Unlike the majority, I believe the trial court's findings of fact are supported by competent evidence, albeit

controverted, are thereby conclusive on appeal, *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 541, 356 S.E.2d 578, 582, *reh'g denied,* 320 N.C. 639, 360 S.E.2d 92 (1987) (trial court's findings of fact conclusive on appeal if supported by competent evidence), and sustain its conclusion that defendants' contacts with this State were sufficient such that exercise of personal jurisdiction "over [them] does not violate the due process clause of the Fourteenth Amendment of the United States Constitution." *See New Bern Pool & Supply Co. v. Graubart,* 94 N.C. App. 619, 624, 381 S.E.2d 156, 159 (1989), *aff'd per curiam,* 326 N.C. 480, 390 S.E.2d 137 (1990) ("existence of minimum contacts cannot be ascertained by mechanical rules, but rather by consideration of the facts of each case in light of traditional notions of fair play and justice") (citation omitted). Accordingly, I vote to affirm the trial court.