UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 00-2392
(CA-99-246-1)

Le Bleu Corporation,

Plaintiff - Appellant,

versus

Standard Capital Group, Incorporated,

Defendant - Appellee.

O R D E R

The court amends its opinion filed June 15, 2001, as follows:

On page 5, third full paragraph, line 2 -- the word "con-
tracts" is corrected to read "contacts."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LE BLEU CORPORATION,
Plaintiff-Appellant,

v.

STANDARD CAPITAL GROUP,
INCORPORATED,
Defendant-Appellee.

No. 00-2392

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CA-99-246-1)

Argued: April 6, 2001

Decided: June 15, 2001

Before LUTTIG and GREGORY, Circuit Judges, and
Rebecca Beach SMITH, United States District Judge
for the Eastern District of Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Linda L. Helms, WILSON & ISEMAN, L.L.P., Winston-
Salem, North Carolina, for Appellant. Martin Nesbitt Erwin, SMITH,
HELMS, MULLISS & MOORE, L.L.P., Greensboro, North Carolina,
for Appellee. **ON BRIEF:** G. Gray Wilson, Urs R. Gsteiger, WIL-

SON & ISEMAN, L.L.P., Winston-Salem, North Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff-appellant Le Bleu Corporation appeals the district court's order granting defendant-appellee Standard Capital Group, Inc.'s motion to dismiss for lack of personal jurisdiction. We affirm on the reasoning of the district court.

I.

In February 1999, Robert Wilson ("Wilson"), an independent venture capital consultant, contacted Standard Capital Group, Inc. ("Standard"), a California corporation, regarding a $20 million capital contribution sought by Le Bleu Corporation ("Le Bleu"), a North Carolina corporation engaged in the business of bottling water for retail distribution. Wilson submitted Le Bleu's financial records to Standard for review and traveled to California to meet with Standard. Subsequently, Standard sent two of its employees to North Carolina to meet with Wilson and Jerry Smith, Le Bleu's president, and to view Le Bleu's operations.

Thereafter, on April 28, 1999, Standard mailed a signed agreement (the "Agreement") to Le Bleu. The Agreement provided that Standard would serve as Le Bleu's financial advisor in connection with either the private placement of debt or the arrangement of a strategic partnership and related financing.

In exchange, Le Bleu agreed to provide Standard a non-refundable retainer fee of $100,000 and also agreed to pay Standard, upon private

2

placement of any debt, a percentage of the proceeds raised, and to issue to Standard an unspecified number of options to purchase common stock in Le Bleu. J.A. 14. The Agreement did not specify where Standard would perform the work related to the transaction.

Le Bleu signed the agreement in North Carolina and mailed it to Standard in California on May 3, 1999. The contemplated term of the Agreement was only three months, since either party could terminate the Agreement "at any time after July 31, 1999," with or without cause. J.A. 15.[1]

Subsequently, Le Bleu sent Standard a $100,000 retainer, and Standard began work in California on a memorandum related to the transaction. Although Standard took a draft memorandum to North Carolina for Le Bleu's review, the memorandum was completed in California and none of the fourteen potential investors to whom the memorandum was sent were located in North Carolina. Four investors, all located in Los Angeles, California, responded, and arrangements were made for a joint team of Standard and Le Bleu employees to make presentations to these investors in Los Angeles. Before the presentations could take place, however, Le Bleu sent Standard new financial figures which, according to Standard, reflected a net change in Le Bleu's financial position of negative $2.571 million. Thereafter, Standard canceled the meetings in California, and Le Bleu requested that Standard return the $100,000 retainer. When Standard declined to return the non-refundable retainer, Le Bleu filed suit in the Superior Court of Forsyth County, North Carolina, alleging breach of contract, fraud, and unfair and deceptive business practices in violation of N.C.G.S. § 75-1.1. Standard removed the case to federal district court in North Carolina on the basis of diversity of citizenship, see 28 U.S.C. § 1332(a), and moved to dismiss the case, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction. The district court referred the motion to a magistrate judge, who recommended dismissing the case for lack of personal jurisdiction over Standard. After considering Le Bleu's objections to the magistrate judge's report and

_____

**1** The "Governing Law" clause provided that the agreement "shall be governed and construed in accordance with the laws of the State of California." J.A. 17.

3

recommendation, the district court adopted the report and dismissed the case without prejudice. This appeal followed.

II.

A federal court may exercise personal jurisdiction over nonresident individuals and corporations in a manner prescribed by state law, so long as the application of the state's long-arm statute comports with the Due Process Clause of the Fourteenth Amendment. See Stover v. O'Connell Assoc., Inc., 84 F.3d 132, 136 (4th Cir. 1994).

Standard concedes that it is subject to North Carolina's long-arm statute, N.C.G.S. § 1-75.4(5)(c), which has been interpreted to extend to the outer limits allowed by the Due Process Clause. See Hiwasse Stables, Inc. v. Cunningham, 519 S.E.2d 317 (N.C. 1999). Thus, the scope of our inquiry is limited to whether North Carolina may, consistent with due process, exercise personal jurisdiction over Standard.

Le Bleu has never claimed that Standard's contacts with North Carolina are sufficiently continuous and systematic to subject Standard to general personal jurisdiction in North Carolina. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 n.9 (1984) (explaining that general jurisdiction is an exercise of personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum). Rather, the issue is one of specific jurisdiction.

In specific jurisdiction cases, "a `relationship among the defendant, the forum, and the litigation' is the essential foundation," Helicopteros, 466 U.S. at 414 (citing Shaffer v. Heitner, 433 U.S. 186, 204 (1977)), while the "constitutional touchstone remains whether the defendant purposefully established `minimum contacts' with the forum State." Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A contract with a resident of a forum state does not automatically constitute sufficient contacts to support the forum's assertion of specific jurisdiction, even where the dispute arises from the contract. See Burger King, 471 U.S. at 478. Rather, for purposes of the due process analysis, the contract must have a "substantial connection with the State," so that the "quality and nature" of a defendant's rela-

4

tionship to the forum "can in no sense be viewed as `random,' `fortu-itous,' or `attenuated.'" <u>Burger King</u>, 471 U.S. at 479-480 (citations omitted).

Le Bleu claims on appeal that the district court erred in adopting the recommendation of the magistrate judge. According to Le Bleu, "that the parties exchanged `some mail and telephone calls,' that two visits were made to North Carolina by defendant's employees, [and] that a payment was mailed from North Carolina and that the contract was signed in North Carolina" were "facts sufficient to support a find-ing of personal jurisdiction." Appellant's Br. at 13.

The magistrate judge considered factors that elucidate the "prior negotiation and contemplated future consequences, along with the terms of the contract and the parties' course of dealing," <u>Burger King</u>, 471 U.S. at 479, and concluded that Le Bleu had shown only a "negli-gible connection with North Carolina," and thus had failed to make a prima facie showing that specific jurisdiction over Standard was proper in North Carolina. <u>See Combs</u> v. <u>Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989) (holding that once the jurisdictional issue is properly raised by an out-of-state defendant at a preliminary stage of the case, as here, the plaintiff need only make a prima facie showing of per-sonal jurisdiction).

The magistrate judge declined to aggregate Standard's other alleged contacts with North Carolina -- contracts alluded to in Wil-son's affidavit and not part of the contract between Standard and Le Bleu -- for purposes of determining whether <u>specific jurisdiction</u> lay in North Carolina, noting that such inquiry would be relevant only to an inquiry into <u>general</u> jurisdiction, which Le Bleu had not claimed.**2**

_____

**2** Nor is the status of Wilson relevant to whether Standard was subject to personal jurisdiction in North Carolina. For, while Le Bleu referred to Wilson as "defendant's agent," or, "at a minimum a dual agent" in its brief and at argument, Le Bleu failed to adduce evidence from which the legal conclusion that Wilson was Standard's agent can be inferred. Nor did the magistrate judge make any such finding. Indeed, Le Bleu itself earlier characterized Wilson as "a self-employed investment consultant working in Charlotte, North Carolina." Dist. Ct. Rec. Vol. I, Tab 16 at 3.

5

J.A. 223 n.3. See also RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1277-78 (7th Cir. 1997) (noting that even prior contracts between parties to the suit are not to be considered in a specific jurisdiction analysis).

Consequently, the magistrate judge's report recommended that Standard's motion to dismiss for lack of personal jurisdiction be granted. And after considering Le Bleu's objections and conducting a de novo review, the district court adopted the magistrate judge's report and dismissed Le Bleu's action without prejudice. J.A. 231.

Upon review of the parties' briefs and the applicable law, and having had the benefit of oral argument, we conclude that the district court correctly decided the issue before it. Accordingly, we affirm on the reasoning of the district court, as embodied in the magistrate judge's report and recommendation.

AFFIRMED

6