IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-92

No. COA21-267

Filed 15 February 2022

Wake County, No. 18 CVS 9604

TARA DOW-REIN, Plaintiff,

v.

MELISSA JONES SARLE; PARAMOUNT SHOW STABLES INC.; WILLIAM
HAROLD SCHAUB; W. H. SCHAUB STABLES, INC. d/b/a OVER THE HILL FARM;
ALLYSON JACOBY COLUCCIO; HIDDEN RIDGE INTERNATIONAL, INC.; EVAN
COLUCCIO, EMC FARMS, INC. a/k/a EMC INTERNATIONAL, INC. d/b/a EMC
INTERNATIONAL STABLES or EMC INTERNATIONAL SALES; ANDREW
KOCHER; and ANDY KOCHER LLC, Defendants.

Appeal by defendants from order entered 25 November 2020 by Judge Keith

Gregory in Wake County Superior Court. Heard in the Court of Appeals 6 October

2021.

> *Ragsdale Liggett PLLC, by Amie C. Sivon, Dorothy Bass Burch, John W. ("Bo")*
> *Walker, and Sandra Mitterling Schilder, for plaintiff-appellee.*
>
> *Young Moore and Henderson, P.A., by David W. Earley and Walter E. Brock,*
> *Jr., for defendants-appellants William Harold Schaub and W. H. Schaub*
> *Stables, Inc. d/b/a Over the Hill Farm.*

DIETZ, Judge.

¶ 1    Plaintiff Tara Dow-Rein brought this action after buying two horses for her

daughter, both of which Dow-Rein found unfit for their intended purpose. Dow-Rein

asserted fraud, breach-of-contract, and other related claims against a number of

defendants, including Defendants William Schaub and W. H. Schaub Stables, Inc. (the Schaub Defendants), who sold her one of the horses and facilitated the purchase of the other.

¶ 2 The Schaub Defendants moved to dismiss for lack of personal jurisdiction. After the trial court denied the motion to dismiss, the Schaub Defendants appealed and we remanded the case for additional fact findings. The trial court entered a new order with additional findings that again denied the motion to dismiss. This appeal followed.

¶ 3 As explained below, we reverse the trial court's order. The trial court found that Dow-Rein initiated contact with the Schaub Defendants; traveled to the Schaub Defendants' farm in Florida to view the first horse, Season; negotiated the sale of Season in Florida; and then picked up Season in Florida to bring back to North Carolina. The court also found that the Schaub Defendants arranged for a second horse, Fred, to be transported from Virginia to Maryland to be shown to Dow-Rein.

¶ 4 The Schaub Defendants' only contact with North Carolina concerning these horse sales was when Dow-Rein sent the executed contract for Season from North Carolina to the Schaub Defendants in Florida, and later sent the payment from North Carolina to Florida.

¶ 5 These contacts are insufficient to show that the Schaub Defendants purposefully availed themselves of the privilege of conducting activities in North

Carolina. We therefore reverse the trial court's order and remand for entry of an order dismissing the claims against the Schaub Defendants for lack of personal jurisdiction.

**Facts and Procedural History**

¶ 6        In 2015, Plaintiff Tara Dow-Rein hired her North Carolina riding trainer, Defendant Melissa Sarle, to assist her in locating and purchasing a horse for Dow-Rein's 11-year-old daughter. With Sarle's assistance, Dow-Rein traveled to Florida to meet Defendant William Schaub, who showed Dow-Rein a horse named Season at his Florida stable.

¶ 7        Dow-Rein purchased Season from Schaub and his corporate entity, W. H. Schaub Stables, Inc. Schaub signed a bill of sale for Season in Florida and sent it to Dow-Rein, who signed it and emailed it back. Dow-Rein then wired the $132,000 purchase price for Season from her North Carolina bank account to the Schaub Defendants in Florida. Dow-Rein took possession of Season in Florida and arranged to ship the horse to North Carolina.

¶ 8        In 2016, the Schaub Defendants provided horse boarding services for Beau, another horse owned by Dow-Rein. In connection with these services, the Schaub Defendants sent invoices to Dow-Rein's home address in North Carolina and kept Dow-Rein's credit card information on file. Those services are unrelated to the legal claims at issue in this case.

¶ 9        After Season arrived in North Carolina, the horse was diagnosed with chronic

lameness that made him unsuitable for Dow-Rein's intended use. Dow-Rein began looking for another horse. In October 2016, Sarle again contacted Schaub on behalf of Dow-Rein, and Schaub arranged for a second horse, Fred, to be brought from Virginia to Maryland to show to Dow-Rein. Schaub then referred Dow-Rein to the brokers for Fred, who are Virginia residents. The Schaub Defendants had no further involvement in the sale of Fred. As with Season, Dow-Rein later determined that Fred was unsuitable for Dow-Rein's intended use.

¶ 10    On 30 July 2018, Dow-Rein filed an unverified complaint asserting claims for fraud, negligence, unfair and deceptive trade practices, and breach of contract related to the sales of Season and Fred. In her complaint, Dow-Rein alleged that the Schaub Defendants knew about the lameness issue with Season, that all defendants knew of Fred's behavior issues, and that the defendants concealed that information from her to sell Season and Fred for higher prices. Dow-Rein later amended the complaint. As alleged in the amended complaint, Schaub is a resident of Florida, his corporate entity is a Florida corporation, and his business operations are located in Florida.

¶ 11    The Schaub Defendants moved to dismiss the claims against them for lack of personal jurisdiction and improper venue. In support of their motion to dismiss, the Schaub Defendants filed affidavits from Schaub along with discovery responses and document production. Dow-Rein filed a single affidavit from a paralegal at her counsel's firm, stating that a review of online records indicated that Schaub owned

horses that competed in North Carolina horse shows in 2015 and 2016.

¶ 12        The trial court heard Defendants' motions to dismiss and entered an order denying the motions. Defendants appealed. On 7 July 2020, this Court filed an opinion in that first appeal, vacating the trial court's order and remanding the matter for the trial court to make necessary jurisdictional findings of fact "based on the appropriate evidence in the record"—specifically, the parties' competing affidavits, the discovery responses, and any undisputed allegations from the unverified complaint. *Dow-Rein v. Sarle*, 272 N.C. App. 446, 843 S.E.2d 731, 2020 WL 3708309, at *3 (2020) (unpublished).

¶ 13        On 28 October 2020, the trial court held a new hearing on the Schaub Defendants' motion to dismiss. The parties sought to introduce additional evidence at the new hearing that was not before the court at the first hearing. The trial court ruled that it would not consider any additional evidence because this Court's mandate instructed the trial court to make additional findings on remand based on the "evidence in the record."

¶ 14        On 25 November 2020, the trial court entered a written order denying the Schaub Defendants' motion to dismiss. The Schaub Defendants appealed.[1]

---

[1] The trial court also entered a written order granting a motion to dismiss filed by other defendants in this action. That order is the subject of a separate, related appeal in this matter. *See Dow-Rein v. Sarle*, No. COA21-262.

**Analysis**

¶ 15   The Schaub Defendants challenge the trial court's denial of their motion to dismiss for lack of personal jurisdiction.

¶ 16   In civil proceedings, the plaintiff "bears the burden of proving, by a preponderance of the evidence, grounds for exercising personal jurisdiction over a defendant." *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68, 698 S.E.2d 757, 761 (2010). As we noted in the first appeal in this case, this personal jurisdiction issue involves fact disputes addressed through competing affidavits of the parties. *Dow-Rein v. Sarle*, 272 N.C. App. 446, 843 S.E.2d 731, 2020 WL 3708309, at *2–3 (2020) (unpublished). In this circumstance, "the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005). We are bound by the trial court's determination of the "credibility or weight" of the facts presented in the competing affidavits. *Id.* at 695, 611 S.E.2d at 183.

¶ 17   In a case like this one, involving what is known as "specific jurisdiction," courts examine whether the defendants had "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, so that they may structure their primary conduct with some minimum assurance as to where that conduct will

and will not render them liable to suit."[2] *Mucha v. Wagner*, 378 N.C. 167, 2021-NCSC-82, ¶ 10. The acts necessary to provide this fair warning often are described as "purposeful availment" because courts examine whether the defendants purposefully availed themselves of the privilege of conducting activities in North Carolina. *Id.* ¶ 11. Identifying which party initiates the contact with the forum state is "a critical factor in assessing whether a nonresident defendant has made 'purposeful availment.'" *CFA Medical, Inc. v. Burkhalter*, 95 N.C. App. 391, 395, 383 S.E.2d 214, 216 (1989). To satisfy the test, the defendant "must expressly aim his or her conduct at that state" or "must have targeted the forum state specifically." *Mucha*, ¶¶ 16, 20.

¶ 18        This Court has decided two cases involving the sale of horses by an out-of-state seller to a North Carolina buyer, and these cases illustrate how to assess purposeful availment in this context. First, in *Watson v. Graf Bae Farm, Inc.*, this Court held that the out-of-state seller's contacts were sufficient to show purposeful availment because the seller advertised horses for sale in North Carolina, the contract for the sale of the horse required the horse be examined by a North Carolina veterinarian, the seller delivered the horse to North Carolina as part of the contract, and the final act of the contract (a veterinarian exam) occurred in North Carolina. 99 N.C. App.

---

[2] There is no dispute concerning the application of North Carolina's long-arm statute and no argument that the Schaub Defendants have sufficient contacts with North Carolina to subject them to general jurisdiction.

210, 213, 392 S.E.2d 651, 653 (1990).

By contrast, in *Hiwassee Stables, Inc. v. Cunningham*, this Court held that the seller's contacts were not sufficient to show purposeful availment because the North Carolina buyers "made the initial contact" with the seller in Florida and the seller performed all key aspects of the sale in Florida. 135 N.C. App. 24, 29, 519 S.E.2d 317, 321 (1999). We observed that the defendants' contacts with North Carolina consisted solely of returning the buyers' phone call, entering into a contract with them, sending billing statements to the buyers in North Carolina, and receiving a payment sent from North Carolina. *Id.* Citing Supreme Court precedent, we held that entering into a contract with a North Carolina resident "may be a sufficient basis for the exercise of in personam jurisdiction," but only if the contract "has a substantial connection to this state." *Id.* The Court held that the connections in *Hiwassee Stables* were not substantial enough to find purposeful availment because "none of the alleged acts" giving rise to the claims occurred in North Carolina and the seller "never shipped anything to this state beyond the one billing statement." *Id.*

The trial court recognized that this case is more closely analogous to *Hiwassee Stables* than to *Watson*, but distinguished *Hiwassee Stables* by concluding that the Schaub Defendants "were engaged in an ongoing business relationship" with Dow-Rein.

The trial court's discussion of this "ongoing business relationship" likely

derives from our Supreme Court's recent decision in *Beem USA Ltd.-Liab. Ltd. P'ship v. Grax Consulting LLC*, 373 N.C. 297, 306, 838 S.E.2d 158, 164 (2020), although the trial court did not cite *Beem* in its order. In *Beem*, the Supreme Court held that a defendant purposefully availed itself of the privilege of conducting activities in North Carolina when a representative of the defendant "came to North Carolina to open a bank account," "traveled to this state on three separate occasions to discuss" the subject matter of the lawsuit, and contacted the North Carolina resident about the matter at issue in the lawsuit "numerous times each month for approximately a year." *Id.* The Supreme Court held that this conduct "established an ongoing relationship with persons and entities located within this state such that it could reasonably anticipate being called into court here." *Id.*

¶ 22      The trial court's findings in this case are far removed from the contacts described in *Beem*. Dow-Rein initiated contact with the Schaub Defendants—they did not reach out to her. The Schaub Defendants did not travel to North Carolina nor did they make calls to North Carolina. The negotiations for the sale of Season took place in Florida. The Schaub Defendants delivered Season to Dow-Rein in Florida. The Schaub Defendants' only contact with North Carolina during the entire transaction was receiving the executed bill of sale and payment that Dow-Rein sent from North Carolina to the Schaub Defendants in Florida.

¶ 23      The trial court, in concluding that there was an "ongoing business relationship"

between the parties, referenced "multiple documents" that the Schaub Defendants sent to North Carolina for their boarding services for another of Dow-Rein's horses, Beau. But those boarding services are unrelated to the claims in this case; they were invoices for boarding Beau at the Schaub Defendants' farm in Florida and have no connection to the sale of Season and, later, Fred for potential use by Dow-Rein's daughter in North Carolina. Similarly, with respect to Fred, the Schaub Defendants' only conduct was arranging for Fred to be transported from Virginia to Maryland so that Dow-Rein could see Fred when she traveled to Maryland. This conduct had no connection to North Carolina at all.

¶ 24     Simply put, the Schaub Defendants' contacts with North Carolina are insufficient to show that they purposefully availed themselves of the privilege of conducting activities in North Carolina. This dispute involves a buyer who traveled to Florida, negotiated to buy a horse in Florida, and then took possession of the horse in Florida before bringing it to North Carolina. The sellers later arranged for another horse to be transported from Virginia to Maryland so that the buyer could travel there and view the animal. The sellers, who are Florida residents and who did not reach out to our State in these business dealings, could not reasonably have anticipated being haled into court in North Carolina over claims concerning either of these horses. We therefore reverse the trial court's order and remand this case for the trial court to dismiss Dow-Rein's claims against the Schaub Defendants for lack of personal

jurisdiction.

## Conclusion

We reverse the trial court's order and remand for entry of an order dismissing the claims against Defendants-Appellants for lack of personal jurisdiction.

REVERSED AND REMANDED.

Judges MURPHY and ARROWOOD concur.