CENTURY DATA SYSTEMS, INC., a North Carolina corporation, Plaintiff/ Appellee v. CHARLES McDONALD, JR.; DENNIS HENDERSON; FRANK N. PERKINS and ROMAINE BARKER, JR., jointly and severally, Defendants/Appellants

No. 9210SC318

(Filed 6 April 1993)

1. **Rules of Civil Procedure § 4 (NCI3d) — nonresident defendants — personal jurisdiction under long-arm statute**

    In an action to enforce covenants not to compete, each nonresident defendant fell within reach of the long-arm statute, N.C.G.S. § 1-75.4, where each travelled from South Carolina to this state for job training, corporate meetings, and management discussions and each defendant thus accepted and ratified the rendition of services (meetings and training) provided by plaintiff in this state; furthermore, two of the defendants promoted and sold products which were shipped from Raleigh to defendants in South Carolina who then filled customer orders.

    **Am Jur 2d, Process §§ 175, 178, 184, 185.**

2. **Process § 9.1 (NCI3d) — nonresident defendants — sufficient minimum contacts with North Carolina — personal jurisdiction properly exercised by North Carolina**

    In an action to enforce covenants not to compete, there was no merit to the nonresident defendants' contention that they lacked sufficient minimum contacts with the state for North Carolina courts to exercise jurisdiction over them consistent with due process, since each of the defendants' contracts was entered in North Carolina; each of the defendants

was provided bi-weekly payroll services out of plaintiff's North Carolina office; each defendant attended sales meetings or training sessions or management discussions in North Carolina; and two of the defendants placed purchase orders with plaintiff's North Carolina office.

**Am Jur 2d, Process §§ 186-195.**

Appeal by defendants from order signed 7 February 1992 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 5 March 1993.

On 27 September 1991 Century Data Systems, Inc. (CDS) filed suit to enforce covenants not to compete against the defendants, Charles McDonald, Jr., Dennis Henderson, Frank Perkins and Romaine E. Barker, Jr. The covenants were part of employment contracts between CDS and the defendants. Each defendant was a resident of South Carolina at the time they entered into their respective employment contracts with the plaintiff. On 12 November 1991 the defendants filed motions to dismiss the suit based on (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; and (3) failure to state a claim for relief. Defendants' motions to dismiss because of lack of subject matter jurisdiction and personal jurisdiction were heard on 3 February 1992. On 7 February 1992 the trial court signed an order denying both motions.

Defendants appeal pursuant to G.S. § 1-277(b).

*Lee A. Patterson, II and Henry A. Mitchell, III for the plaintiff-appellee.*

*Harris, Shields and Creech, P.A., by C. David Creech; and David S. Morris, for the defendant-appellants.*

EAGLES, Judge.

The sole issue presented by this appeal is whether the trial court correctly determined that it had personal jurisdiction over each of the defendants. We agree with the trial court and affirm.

To decide the issue of whether or not personal jurisdiction exists over an out-of-state defendant, we must make a two-part inquiry. First, we must decide if the transaction at issue is covered by a "long arm" statute. If so, we must then decide

if exercise of the statutory grant of jurisdiction violates the federal due process clause.

*Liberty Finance Co. v. North August Computer Store*, 100 N.C. App. 279, 282, 395 S.E.2d 709, 711 (1990) (citations omitted). " '[When] jurisdiction is challenged, plaintiff has the burden of proving *prima facie* that a statutory basis for jurisdiction exists.' " *Cherry Bekaert & Holland v. Brown*, 99 N.C. App. 626, 629-30, 394 S.E.2d 651, 654 (1990) (citation omitted).

> We note that the trial court did not make any findings of fact to support his ruling denying defendant's motion to dismiss. However, when there is no request of the trial court to make such findings, "we presume that the judge found facts sufficient to support the judgment. . . ." *Church v. Carter*, 94 N.C. App. 286, 289, 380 S.E.2d 167, 169 (1989). "[If the] presumed findings are supported by competent evidence in the record, [they] are conclusive on appeal, notwithstanding other evidence in the record to the contrary." *Id.*, at 289-90, 380 S.E.2d at 169.

*Id.* at 630, 394 S.E.2d at 654.

### Long-Arm Statute

[1] Defendants first argue that North Carolina's long-arm statute, G.S. § 1-75.4, does not reach the defendants. We disagree.

"Our [long-arm] statute is designed to extend jurisdiction over nonresident defendants to the fullest limits permitted by the Fourteenth Amendment's due process clause. We thus give a broad and liberal construction to the provisions of the statute, within the perimeters established by federal due process." *Church v. Carter*, 94 N.C. App. 286, 290, 380 S.E.2d 167, 169 (1989) (citations omitted).

G.S. § 1-75.4 provides, in pertinent part:

> A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances:

> * * *

> (5) Local Services, Goods or Contracts.—In any action which:

> * * *

CENTURY DATA SYSTEMS v. McDONALD

[109 N.C. App. 425 (1993)]

      b. Arises out of services actually performed for the plaintiff by the defendant within this State, or services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant; or

      c. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this State, or to ship from this State goods, documents of title, or other things of value. . . .

Each of the defendants filed separate affidavits together with a joint motion to dismiss. In their respective affidavits the defendants make the following admissions: Defendant McDonald admitted making approximately four trips to North Carolina to meet with corporate personnel; defendant Henderson admitted returning to North Carolina on two separate occasions for training; defendant Barker admitted coming to North Carolina two times to attend five day training seminars; and finally, defendant Perkins admitted coming to North Carolina once a year for sales meetings until he quit working for the plaintiff. Record evidence indicates that defendant Perkins worked for the plaintiff from 1987 to 1991.

Kenneth Wertz, the plaintiff's Vice-President of Finance, filed an affidavit in which he stated that: defendant McDonald came to North Carolina for six separate meetings between October 1990 and July 1991; defendant Henderson attended two meetings in North Carolina between December 1990 and February 1991; defendant Perkins attended a meeting on 13 December 1990 in North Carolina; and defendant Barker, on information and belief, returned to North Carolina on at least one occasion. Mr. Wertz's affidavit further states: "That Defendants personally appeared in North Carolina to take advantage of job training, provided by C.D.S. for corporate meetings and management discussions."

Plaintiff argues that these meetings constituted "services actually performed for the defendant[s] by the plaintiff within this state where such performance within this state was authorized or ratified by the defendant. . . ." At least one defendant, Henderson, alleges that he came to the North Carolina meetings at the request of the plaintiff. However, regardless of whether the plaintiff requested the defendants to attend, when we construe the provisions of G.S. § 1-75.4 liberally in favor of jurisdiction, as we must do, it becomes clear that each defendant accepted and ratified the

CENTURY DATA SYSTEMS v. McDONALD

[109 N.C. App. 425 (1993)]

rendition of services (meetings and training) provided by the plaintiff in this State. Accordingly, each defendant falls within reach of our long-arm statute.

Moreover, we note that the employment contracts of both defendant McDonald and Perkins provide that it was their duty to "sell and promote all of the products marketed, sold, or leased by the" plaintiff in their respective sales areas. Mr. Wertz's affidavit provides in part:

> That goods were shipped and services were provided from North Carolina to the Defendants in South Carolina including, but not limited to:

> \* \* \*

> d. Customer order processing and all contacts with vendors:

> Purchasing takes place in Raleigh, N.C. Salesmen from South Carolina call with a proposal from their South Carolina customer. They requisition the products from Raleigh, and if the Raleigh headquarters office does not have the product in stock, CDS Raleigh makes an order with the vendor for the goods that are required by the proposal. Customarily (99% of the time) the products ordered form [sic] the vendors came directly to Century Data Systems Raleigh headquarters [sic] office. The products were then shipped from Raleigh to South Carolina to fulfill the customers order. Infrequently, an order may be shipped direct from the vendor to the customer.

Accordingly, we hold that defendants McDonald and Perkins also fall within the reach of paragraph (5)c. of the North Carolina long-arm statute.

## Due Process

[2] Defendants next argue that defendants lack sufficient minimum contacts with the State of North Carolina for our courts to exercise jurisdiction over them consistent with due process. We disagree.

> To satisfy the requirements of the due process clause, there must exist "certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice. . . .' " In each case, there must be some act by which the defendant purpose-

> fully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law . . . This relationship between the defendant and the forum must be "such that he should reasonably anticipate being haled into court there."

*Tom Togs, Inc.*, at 365, 348 S.E.2d at 786 (citations omitted). The forum state may exercise jurisdiction over a defendant if there are "sufficient 'continuous and systematic' contacts between the defendant and the forum state." *Williams*, at 427, 355 S.E.2d at 181 (citation omitted).

> Factors for determining existence of minimum contacts include " '(1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties.' " *New Bern Pool & Supply Co. v. Graubart*, 94 N.C. App. 619, 624, 381 S.E.2d 156, 159, *affirmed per curiam*, 326 N.C. 480, 390 S.E.2d 137 (1990) (citations omitted).

*Cherry Bekaert & Holland*, 99 N.C. App. at 632, 394 S.E.2d at 655-56. "No single factor controls, but they all must be weighed in light of fundamental fairness and the circumstances of the case." *B.F. Goodrich Co. v. Tire King of Greensboro, Inc.*, 80 N.C. App. 129, 132, 341 S.E.2d 65, 67 (1986) (citations omitted).

*(1) Quantity of Contacts*

*A. Defendant McDonald:* The record indicates that the defendant entered three successive contracts with the plaintiff: In October 1986 the defendant, then a resident of New Hanover County, North Carolina, entered a contract with the plaintiff whereby he agreed to sell and promote the plaintiff's products and to serve as sales manager of the plaintiff's Wilmington office; in July 1988 the defendant, still a resident of New Hanover County, North Carolina, entered into a contract with the plaintiff to sell and promote the plaintiff's products and to serve as Branch Manager of both plaintiff's Charleston, South Carolina and Savannah, Georgia, offices; and, finally, in September 1990 the defendant, then a resident of South Carolina, entered a contract (effective January 1990) with the plaintiff under which he agreed to sell and promote the plaintiff's products and serve as the Branch Manager of plaintiff's Charleston, South Carolina, office.

CENTURY DATA SYSTEMS v. McDONALD

[109 N.C. App. 425 (1993)]

The record also discloses, according to Mr. Wertz's affidavit, that the defendant was employed in plaintiff's Wilmington office until July 1988. Mr. Wertz's affidavit also states that the defendant attended three meetings in North Carolina in 1990 and three meetings in North Carolina in 1991. Indeed, the defendant admits in his affidavit that he has come to North Carolina on four separate occasions since December of 1988 to meet with corporate personnel. Finally, as discussed above, Mr. Wertz's affidavit discloses that the defendant placed purchase orders with plaintiff's North Carolina office.

B. Defendant Henderson: The record indicates that this defendant entered into two contracts with the plaintiff. In May 1990 the defendant, then a South Carolina resident, entered a contract (effective March 1990) with plaintiff whereby he agreed to install, program and support the plaintiff's products. In February 1991 defendant, still a South Carolina resident, entered a second contract (effective January 1991) under which he agreed to maintain and service all of the plaintiff's products as well as serve as Manager of Field Engineering of plaintiff's Charleston office. Further, according to Mr. Wertz's affidavit the defendant also attended at least one two day meeting in North Carolina in 1990 and one two day meeting in North Carolina in 1991. Defendant admits attending two training meetings in North Carolina.

C. Defendant Barker: The record indicates that defendant Barker, a resident of South Carolina, entered into a contract (effective November 1990) with the plaintiff in December of 1990 under which he agreed to install, program and support plaintiff's products. Mr. Wertz's affidavit provides that this defendant came to North Carolina on at least one occasion. However, the defendant, in his affidavit, admits attending two five day sessions of programming school sponsored by CDS in North Carolina during 1991.

D. Defendant Perkins: According to the record, defendant Perkins also entered into a number of contracts with the plaintiff: In February 1987 defendant, then a resident of New Hanover County, North Carolina, entered a contract (effective January 1987) whereby he agreed to sell and promote the plaintiff's products. In September 1987, September 1989 and September 1990, the defendant, then a resident of South Carolina, also entered contracts (respectively effective July 1987, August 1989, and July 1990) to sell and promote the plaintiff's products.

Mr. Wertz's affidavit states that between May 1984 and February 1987 the defendant was employed in the plaintiff's Wilmington, North Carolina, office; that in December 1990 the defendant attended a CDS meeting in Charlotte, North Carolina, on customer installation; and that as discussed above the defendant placed purchase orders with the plaintiff's North Carolina office. Defendant admits coming to North Carolina once a year for annual one day sales meetings.

*E. All Defendants:* Mr. Wertz's affidavit states that each of the defendants was provided bi-weekly payroll services out of plaintiff's North Carolina office. Finally, each of the defendants' contracts was entered in North Carolina. "Under North Carolina law, a contract is made in the place where the last act necessary to make it binding occurred." *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 785 (1986) (citation omitted).

Furthermore, there is evidence in the record to support the plaintiff's argument that each of the defendants breached the covenants not to compete. Plaintiff's verified complaint alleges (1) that prior to terminating their employment with the plaintiff, the defendants formed a South Carolina corporation for the purpose of soliciting plaintiff's existing and prospective customers; (2) that defendants have advertised in business periodicals and newspapers to lure plaintiff's existing and prospective customers to defendants' new corporation; (3) that the defendants personally solicited two South Carolina accounts; (4) that the defendants have sent direct mail to plaintiff's current customers; and (5) that defendant McDonald has solicited and encouraged three of plaintiff's employees to terminate their employment with the plaintiff and to go to work for the new South Carolina corporation. Mr. Clarence Wiggins, plaintiff's president, submitted an affidavit in which he described solicitations etc. that each of the defendants have been involved in. In addition, Sue Halsema, a South Carolina resident, submitted an affidavit that defendants McDonald and Perkins acted in direct and open competition with the plaintiff by soliciting her employer's business. Finally, Martha Sessoms, a North Carolina resident, submitted an affidavit which stated *inter alia*: (1) that she met defendant McDonald in Wilmington to discuss business; (2) that defendant McDonald was in Wilmington making sales calls on existing CDS clients; (3) that defendant McDonald offered her a job in the Wilmington area; and (4) that defendants McDonald and Perkins were

selling the products while defendants Henderson and Barker were servicing and maintaining the products, all in direct competition with the plaintiff.

Defendants argue that under their most recent contracts they were employed by the plaintiff to work in South Carolina, and that the contracts do not require the defendants to perform services in North Carolina. "In light of modern business practices, the quantity, *or even the absence of actual physical contacts with the forum state*, merely constitutes a factor to be considered and is not of controlling weight." *Ciba-Geigy Corp. v. Barnett*, 76 N.C. App. 605, 607-08, 334 S.E.2d 91, 93 (1985) (emphasis added). Defendants' argument overlooks the actual contacts, both physical and non-physical, set out above that each of the defendants had with North Carolina. Moreover, defendants' argument overlooks the fact that each of the contracts was entered into in North Carolina. *Tom Togs, Inc.*, 318 N.C. at 365, 348 S.E.2d at 785.

### (2) Nature and Quality of Contacts

Plaintiff's evidence, most notably the verified complaint, indicates that each of the defendants was engaged in an ongoing relationship with the plaintiff at the time that the South Carolina corporation was formed, and that the defendants began open competition with the plaintiff in alleged violation of the non-competition agreements. Plaintiff's evidence also indicates that defendants relied on plaintiff's North Carolina offices for training, meetings, issuance of pay checks, receipt of purchase orders and even shipment of goods.

### (3) Source and Connection of Cause of Action

"The cause of action arose directly out of [defendants'] activities for which [they were] compensated by [the plaintiff]." *B.F. Goodrich Co.*, 80 N.C. App. at 133, 341 S.E.2d at 68. The defendants were compensated both for their sales and maintenance as well as for their agreements to refrain from violating their respective non-competition agreements.

### (4) Interest of the Forum State

"It is generally conceded that a state has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Tom Togs, Inc.*, 318 N.C. at 367, 348 S.E.2d at 787. This principle holds true where as here the defendants are alleged to have purposefully violated their con-

tracts to engage in open competition with the plaintiff. *See Ciba-Geigy Corp.*, 76 N.C. App. at 608, 334 S.E.2d at 93 (Our court noted the "powerful public interest of a forum state in protecting its citizens against out-of-state tortfeasors" where the defendant committed fraud upon a North Carolina corporation without physically coming into this state.).

### (5) Convenience

We are unable to discern any relevant convenience factors from the record other than the unavoidable inconvenience of a party being required to litigate outside its home state. *B.F. Goodrich Co.*, 80 N.C. App. at 133, 341 S.E.2d at 68.

Moreover, we note that the defendants could reasonably foresee having their contract disputes resolved in North Carolina and that it is fair to all parties concerned to have them resolved here.

> The "crucial" foreseeability of being subject to litigation in the forum court is whether defendant could reasonably anticipate being haled into court. "In making this determination, the interest of, and fairness to, both the plaintiff and the defendant must be considered and weighed."

> A factor in determining fairness concerning a breach of contract cause of action is whether the contract expressly provides that the law of the forum state would apply to actions arising out of the contract.

*Cherry, Bekaert & Holland*, 99 N.C. App. at 635, 394 S.E.2d at 657. Here, each of the contracts provides: "the law of the State of North Carolina will govern this Contract and . . . the terms and provisions thereof shall be construed and interpreted under the Law of the State of North Carolina."

### Conclusion

"Upon review of these factors and the relevant cases, we conclude that [the defendants have] sufficient minimum contacts, purposefully made, with North Carolina and that exercise of jurisdiction over [their] person by our courts does not offend due process." *B.F. Goodrich Co.*, 80 N.C. App. at 133, 341 S.E.2d at 68. Accordingly, we hold that there is competent evidence of record to support the presumed findings of the trial court.

**IN RE PETITION BY E. I. DuPONT DE NEMOURS AND CO.**

[109 N.C. App. 435 (1993)]

Affirmed.

Judges COZORT and WYNN concur.