LABORATORY CORPORATION OF AMERICA HOLDINGS, DIANON SYSTEMS, INC., PLAINTIFFS v. CINDY CACCURO AND LAKEWOOD PATHOLOGY ASSOCIATES, INC. D/B/A PLUS DIAGNOSTICS, DEFENDANTS

No. COA10-877

(Filed 21 June 2011)

**1. Appeal and Error— interlocutory orders and appeals— personal jurisdiction**

Although defendant's appeal from an order denying her motion to dismiss based on lack of personal jurisdiction was from an interlocutory order, it was proper under N.C.G.S. § 1-277(b).

**2. Jurisdiction— personal—long-arm statute**

The trial court did not err in a breach of contract, breach of covenant of good faith and fair dealing, conversion, and unfair competition case by denying defendant's motion to dismiss for lack of personal jurisdiction based on the long arm statute under N.C.G.S. § 1-75.4(5)(d). All that was required to satisfy the statute was that defendant demanded money from plaintiff, and plaintiff paid the money from North Carolina.

**3. Jurisdiction— minimum contacts—due process**

The trial court did not err by concluding that the exercise of personal jurisdiction satisfied the minimum contacts requirement of due process.

Appeal by defendant from order entered 21 April 2010 by Judge J.B. Allen, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 27 January 2011.

*Parker Poe Adams & Bernstein LLP, by Patricia T. Bartis and Matthew H. Mall, for plaintiffs-appellees.*

*Robinson & Lawing, LLP, by Michael L. Robinson and H. Stephen Robinson; and Winston & Strawn LLP, by William G. Miossi, for defendant-appellant Cindy Caccuro.*

GEER, Judge.

Defendant Cindy Caccuro appeals from an order denying her motion to dismiss for lack of personal jurisdiction. Because the trial court's unchallenged findings of fact support its conclusion that (1) the exercise of personal jurisdiction satisfies the requirements of our

State's long-arm statute, N.C. Gen. Stat. § 1-75.4 (2009), and (2) Caccuro had sufficient minimum contacts with the State to satisfy the requirements of due process, we affirm the trial court's order.

## Facts

Plaintiffs Laboratory Corporation of America Holdings ("LabCorp") and Dianon Systems, Inc., a subsidiary of LabCorp, filed a complaint on 12 June 2009, an amended complaint on 6 October 2009, and a second amended complaint on or about 22 February 2010 against Caccuro, a former LabCorp employee, and Lakewood Pathology Associates, Inc. d/b/a/ PLUS Diagnostics, Caccuro's new employer. Plaintiffs asserted claims for relief against Caccuro for breach of contract, breach of the covenant of good faith and fair dealing, conversion, and unfair competition. With respect to PLUS Diagnostics, plaintiffs asserted claims for tortious interference with contract and unfair competition.

Plaintiffs alleged in their second amended complaint that, from February 2006 through November 2008, Caccuro worked for LabCorp as a Special Development Executive ("SDE"). In this capacity, she was responsible for developing new accounts and servicing existing accounts in Philadelphia, Pennsylvania, and the surrounding areas. According to the second amended complaint, Caccuro, during her employment, developed relationships with LabCorp customers and had access to LabCorp's highly confidential and proprietary information, including customer lists, pricing, marketing practices, methods of operation, and the needs and requirements of LabCorp's customers.

Plaintiffs alleged that after Caccuro terminated her employment in November 2008, she went to work for PLUS Diagnostics, a direct competitor of LabCorp, and violated the terms of the Non-Solicitation/ Confidentiality Agreement ("Non-Solicitation Agreement") she had executed with LabCorp. Specifically, plaintiffs claimed that Caccuro had unlawfully retained confidential and proprietary materials belonging to LabCorp and had solicited the business of a particular LabCorp customer for whom she had primary responsibility while a LabCorp employee.

Plaintiffs further alleged that on or about 2 June 2009, Caccuro called LabCorp's client services office, falsely represented herself as being a customer of LabCorp, and provided the customer's LabCorp account number in order to obtain confidential LabCorp information relating to that customer that she could then use to solicit the

customer's business for her new employer. Plaintiffs asserted that Caccuro was acting on behalf of PLUS Diagnostics when she violated the terms of the Non-Solicitation Agreement and that she and PLUS Diagnostics "fraudulently sought LabCorp's confidential information to gain an unfair competitive advantage for the benefit of PLUS Diagnostics and to the detriment of LabCorp."

In response to the complaint and first amended complaint, both Caccuro, a Pennsylvania resident, and PLUS Diagnostics, a nonresident corporation, filed joint motions to dismiss for lack of personal jurisdiction pursuant to N.C.R. Civ. P. 12(b)(2). After plaintiffs filed the second amended complaint, only Caccuro filed a motion to dismiss for lack of personal jurisdiction.[1] The trial court denied Caccuro's motion to dismiss, finding that jurisdiction over Caccuro is proper pursuant to N.C. Gen. Stat. § 1-75.4(5)(c), (d), and (e) and comports with due process requirements. Caccuro appealed from that order to this Court.

## Discussion

[1] Although the order denying Caccuro's motion to dismiss is an interlocutory order, her appeal of the trial court's Rule 12(b)(2) decision is proper under N.C. Gen. Stat. § 1-277(b) (2003). *See Love v. Moore*, 305 N.C. 575, 581, 291 S.E.2d 141, 146 (1982) ("[T]he right of immediate appeal of an adverse ruling as to jurisdiction over the person, under [N.C. Gen. Stat. § 1-277(b)], is limited to rulings on 'minimum contacts' questions, the subject matter of Rule 12(b)(2).").

"A two-step analysis applies in determining whether a North Carolina court has personal jurisdiction over a nonresident defendant: 'First, the transaction must fall within the language of the State's "long-arm" statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution.'" *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005) (quoting *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986)). It is well established that the long-arm statute is "to be liberally construed in favor of finding personal jurisdiction, subject only to due process considerations." *Dataflow Cos. v. Hutto*, 114 N.C. App. 209, 212, 441 S.E.2d 580, 582 (1994).

---

1. In their briefs, the parties state that PLUS Diagnostics agreed to withdraw its jurisdictional challenges in January 2010. PLUS Diagnostics is not a party to this appeal.

## LAB. CORP. OF AM. HOLDINGS v. CACCURO

[212 N.C. App. 564 (2011)]

When this Court reviews a trial court's ruling on a motion to dismiss for lack of personal jurisdiction, it considers " 'whether the findings of fact by the trial court are supported by competent evidence in the record . . . .' " *Banc of Am.*, 169 N.C. App. at 694, 611 S.E.2d at 183 (quoting *Replacements, Ltd. v. MidweSterling*, 133 N.C. App. 139, 140-41, 515 S.E.2d 46, 48 (1999)). The trial court's conclusions of law are subject to de novo review. *Cambridge Homes of N.C. Ltd. P'ship v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 417, 670 S.E.2d 290, 298 (2008). Since Caccuro does not challenge the sufficiency of the evidence to support the trial court's findings, the only question is whether the findings support the court's conclusions of law.

I. Long-Arm Statute

[2] We first address Caccuro's contention that the court erred in determining that jurisdiction is proper under N.C. Gen. Stat. § 1-75.4(5)(d), the subsection of the long-arm statute that provides:

A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j), Rule 4(j1), or Rule 4(j3) of the Rules of Civil Procedure under any of the following circumstances:

. . . .

(5) Local Services, Goods or Contracts.—In any action which:

. . . .

d. Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction[.]

The trial court found and Caccuro does not dispute that during Caccuro's employment with LabCorp, plaintiffs made money payments to Caccuro by sending checks to her. There is no question that these checks constituted "a 'thing of value' within the meaning of the long-arm statute." *Hiwassee Stables, Inc. v. Cunningham*, 135 N.C. App. 24, 27, 519 S.E.2d 317, 320 (1999) (quoting *Pope v. Pope*, 38 N.C. App. 328, 331, 248 S.E.2d 260, 262 (1978)).

The question in this case is whether those "things of value" were sent from North Carolina at Caccuro's request. Caccuro insists that N.C. Gen. Stat. § 1-75.4(5)(d) is inapplicable because she did not

specifically direct that plaintiffs send the checks from North Carolina. This Court, however, rejected that argument in *Cherry Bekaert & Holland v. Brown,* 99 N.C. App. 626, 394 S.E.2d 651 (1990).

The defendant in *Cherry Bekaert* withdrew from the plaintiff's partnership in North Carolina, moved to Alabama, and demanded money owed to him. *Id.* at 631, 394 S.E.2d at 655. In support of his motion to dismiss for lack of personal jurisdiction, the defendant argued that the plaintiff could have chosen to pay him from accounts in states other than North Carolina, but that the plaintiff—and not the defendant—chose to use a North Carolina account. *Id.* at 630, 394 S.E.2d at 655. According to the defendant, "a strict interpretation of N.C.G.S. § 1-75.4(5)(d) . . . would require personal jurisdiction only if defendant's 'order or direction' specifies that plaintiff *ship from this* state a thing of value." *Id.* at 631, 394 S.E.2d at 655.

This Court rejected the defendant's argument as "untenable in light of our courts' policy of liberally and broadly construing statutory jurisdictional requirements in favor of finding personal jurisdiction." *Id.* The Court held that "[b]ecause defendant directed plaintiff to send his monies to him in Alabama and plaintiff distributed the money from North Carolina, the money paid is 'shipped from this State by the plaintiff to . . . defendant on his order or direction.' " *Id.* (quoting N.C. Gen. Stat. § 1-75.4(5)(d)). In other words, under *Cherry Bekaert,* all that is required to satisfy N.C. Gen. Stat. § 1-75.4(5)(d) is that a defendant demanded money from the plaintiff and the plaintiff paid the money from North Carolina.

According to the trial court's unchallenged findings of fact in this case, Caccuro chose to enter into a Non-Solicitation Agreement and two Compensation Plans providing for her receipt of compensation payments from LabCorp. Under *Cherry Bekaert,* because Caccuro contracted to receive compensation from LabCorp and directed LabCorp to send her checks to her out of state, and LabCorp distributed the checks from North Carolina, the checks were " 'shipped from this State by the plaintiff to . . . defendant on his order or direction.' " *Id.* (quoting N.C. Gen. Stat. § 1-75.4(5)(d)).

We, therefore, hold that the trial court's findings of fact adequately support its conclusion that personal jurisdiction over Caccuro is proper under N.C. Gen. Stat. § 1-75.4(5)(d). *See Hiwassee Stables,* 135 N.C. App. at 27, 519 S.E.2d at 320 (holding N.C. Gen. Stat. § 1-75.4(5)(d) applied when "defendants directed plaintiffs to send payment due them to Florida, and plaintiffs distributed the payment

from North Carolina . . . in the form of a check drawn on a bank in this state"); *ETR Corp. v. Wilson Welding Serv., Inc.*, 96 N.C. App. 666, 667, 668-69, 386 S.E.2d 766, 767, 768 (1990) (holding N.C. Gen. Stat. § 1-75.4(5)(d) applied when bill was sent from defendant's out-of-state office to plaintiff, and check was drawn on plaintiff's North Carolina bank account and mailed to defendant). Consequently, we need not address Caccuro's arguments regarding N.C. Gen. Stat. § 1-75.4(5)(c) or (e).

## II. Minimum Contacts

**[3]** Our inquiry now turns to whether the exercise of personal jurisdiction satisfies the requirements of due process. Under the due process clause, there must exist "certain minimum contacts [between the non-resident defendant and the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945) (internal quotation marks omitted).

As our Supreme Court has stated, "[i]n each case, there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws; the unilateral activity within the forum state of others who claim some relationship with a non-resident defendant will not suffice." *Tom Togs*, 318 N.C. at 365, 348 S.E.2d at 786. Instead, the "relationship between the defendant and the forum must be 'such that he should reasonably anticipate being haled into court there.' " *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501, 100 S. Ct. 559, 567 (1980)).

The United States Supreme Court has recognized two bases for finding sufficient minimum contacts: specific jurisdiction and general jurisdiction. Specific jurisdiction exists when "the controversy arises out of the defendant's contacts with the forum state." *Id.* at 366, 348 S.E.2d at 786. General jurisdiction may be asserted over a defendant "even if the cause of action is unrelated to defendant's activities in the forum as long as there are sufficient 'continuous and systematic' contacts between defendant and the forum state." *Replacements*, 133 N.C. App. at 145, 515 S.E.2d at 51 (quoting *Fraser v. Littlejohn*, 96 N.C. App. 377, 383, 386 S.E.2d 230, 234 (1989)). General jurisdiction is

not at issue in this case. Specific jurisdiction is the only possible basis for finding minimum contacts here.[2]

With respect to specific jurisdiction, "the relationship among the defendant, the forum state, and the cause of action is the essential foundation for the exercise of *in personam* jurisdiction." *Tom Togs*, 318 N.C. at 366, 348 S.E.2d at 786. Our courts consider the following factors in determining whether minimum contacts exist: (1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) the convenience to the parties. *Replacements*, 133 N.C. App. at 143, 515 S.E.2d at 49.

"Although a contractual relationship between a North Carolina resident and an out-of-state party alone does not *automatically* establish the necessary minimum contacts with this State, nevertheless, a single contract may be a sufficient basis for the exercise of *in personam* jurisdiction if it has a substantial connection with this State." *Tom Togs*, 318 N.C. at 367, 348 S.E.2d at 786. In *Tom Togs*, the Court concluded that there was sufficient evidence of a substantial connection with this State when (1) "the defendant made an offer to plaintiff whom defendant knew to be located in North Carolina," (2) the "[p]laintiff accepted the offer in North Carolina," and (3) the "[d]efendant was . . . aware that the contract was going to be substantially performed in this State." *Id.*, 348 S.E.2d at 786-87. Based on this evidence, the Court ruled that the "defendant purposefully availed itself of the protection and benefits of [North Carolina's] laws." *Id.*, 348 S.E.2d at 787.

In this case, the trial court made the following unchallenged findings of fact pertinent to specific jurisdiction. Caccuro chose to enter into employment contracts with LabCorp, a corporation with its headquarters, research centers, laboratories, and patient service centers all located in North Carolina.. The corporate Human Resources Division and National Sales Administration, Corporate Payroll, and other corporate offices related to Caccuro's employment were all located in Burlington, North Carolina. As a LabCorp SDE, Caccuro was trained to sell and was responsible for selling medical laboratory testing—testing that was to be performed exclusively in North Carolina laboratories. In other words, Caccuro was selling North Carolina services.

---

2. We note that although Caccuro argues about specific and general jurisdiction with respect to the application of the long-arm statute, the question of specific or general jurisdiction relates to due process and the minimum contacts analysis.

Caccuro entered into not one but three agreements with LabCorp: the Non-Solicitation Agreement and the two Compensation Plans. As the trial court found, each of these agreements "contemplated continuing obligations between Caccuro and LabCorp's North Carolina headquarters and were performed in substantial part in North Carolina." Pursuant to the Non-Solicitation Agreement, Caccuro's employment was administered from North Carolina. Both of the Compensation Plans signed by Caccuro directed that the plans be sent to the National Sales Administration in North Carolina. In addition, under the agreements, Caccuro received employee benefits and technical marketing assistance that were administered from LabCorp's North Carolina headquarters.

With respect to compensation, Caccuro received at least 100 checks for base salary and incentive compensation that were drawn from LabCorp's North Carolina bank account. The checks and Caccuro's W-2 forms list North Carolina addresses for LabCorp. In addition to compensation checks, Caccuro received business and expense reimbursement on checks drawn on LabCorp's North Carolina account.

Caccuro also had the benefit of a company-provided vehicle, which was coordinated through the Corporate Fleet Department in North Carolina. Caccuro was allowed to use the vehicle not only for business purposes, but also for personal use in exchange for a $75.00 per month deduction from her paycheck by Corporate Payroll in North Carolina. She, in essence, was paying for part of the vehicle in North Carolina. Insurance on the vehicle was obtained by the Corporate Risk Management Department also located in North Carolina.

As for communications, during her employment, Caccuro made at least three phone calls to LabCorp's Information Technology Service Desk in North Carolina. She also sent a fax to LabCorp headquarters in North Carolina.

We further observe that the lawsuit arises directly out of one of the contracts that had a substantial connection with this State, the Non-Solicitation Agreement. Plaintiffs allege that Caccuro breached that Agreement—an agreement Caccuro knew was being administered in North Carolina and would result in benefits to Caccuro being provided from North Carolina.

In *Century Data Systems, Inc. v. McDonald*, 109 N.C. App. 425, 430-33, 428 S.E.2d 190, 192-94 (1993), even though the four defendant employees had either worked in or visited North Carolina as part of their employment with the plaintiff, this Court focused not on their prior physical presence in North Carolina, but on the fact that the defendants had entered into employment contracts with the plaintiff in North Carolina, and the lawsuit arose out of the defendants' violation of their covenants not to compete.

The Court in *Century Data Systems* observed that " '[i]n light of modern business practices, the quantity, *or even the absence of actual physical contacts with the forum state*, merely constitutes a factor to be considered and is not of controlling weight.' " *Id.* at 433, 428 S.E.2d at 194 (quoting *Ciba-Geigy Corp. v. Barnett*, 76 N.C. App. 605, 607-08, 334 S.E.2d 91, 93 (1985)). Not only had the defendants in *Century Data Systems* entered into contracts with the plaintiff in North Carolina, but, as in this case, "[t]he cause of action arose directly out of [defendants'] activities for which [they were] compensated by [the plaintiff].' " *Id.* (quoting *B.F. Goodrich Co. v. Tire King of Greensboro, Inc.*, 80 N.C. App. 129, 133, 341 S.E.2d 65, 68 (1986)).

The defendants in *Century Data Systems* entered into contracts with a North Carolina-based company under which they were compensated for their sales and service of the plaintiff's products outside of North Carolina and were provided payroll services out of plaintiff's North Carolina office. *Id.* at 431-32, 428 S.E.2d at 194. The Court also pointed out that the defendants "relied on plaintiff's North Carolina offices for training, meetings, issuance of pay checks, receipt of purchase orders and even shipment of goods." *Id.* at 433, 428 S.E.2d at 194. According to the Court, each of the defendants "was engaged in an ongoing relationship with the plaintiff," a North Carolina company. *Id.* In light of *Century Data Systems*, we hold that, given the trial court's findings of fact in this case, the trial court did not err in determining that Caccuro had the necessary minimum contacts with this State.

Caccuro argues, however, that she had no more contacts with North Carolina than those held insufficient to comport with due process in *Curvcraft, Inc. v. J.C.F. & Assocs.*, 84 N.C. App. 450, 352 S.E.2d 848 (1987). In *Curvcraft*, the defendant was a Maryland corporation that acted as a distributor for the North Carolina-based plaintiff for about four months. *Id.* at 450-51, 352 S.E.2d at 848-49. The services to be performed under the contract were to occur outside

North Carolina, and the defendant's only contacts with North Carolina were phone calls, three shipments of office chairs from the plaintiff in North Carolina to the defendant, and the receipt of a single commission check. *Id.* at 452, 352 S.E.2d at 849.

Here, by contrast, the parties' contractual relationship lasted nearly three years, Caccuro sold laboratory testing that was performed in North Carolina, and at least 100 checks were sent from LabCorp in North Carolina to Caccuro, in addition to all the other contacts found by the trial court. *Curvcraft* is not analogous.

Next, we note that even when the trial court concludes that a defendant has "purposefully established minimum contacts within the forum State," the court must also consider those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 543, 105 S. Ct. 2174, 2184 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 320, 90 L. Ed. at 104, 66 S. Ct. at 160). In making this determination, our courts have considered (1) the interest of North Carolina and (2) the convenience of the forum to the parties. *Replacements*, 133 N.C. App. at 143, 515 S.E.2d at 49. *See also Burger King*, 471 U.S. at 477, 85 L. Ed. 2d at 543, 105 S. Ct. at 2184 (noting that courts should consider " 'the forum State's interest in adjudicating the dispute' " and " 'the plaintiff's interest in obtaining convenient and effective relief' " (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292, 62 L. Ed. 2d at 498, 100 S. Ct. at 564)).

With respect to North Carolina's interest, " '[i]t is generally conceded that a state has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.' " *Century Data Sys.*, 109 N.C. App. at 433, 428 S.E.2d at 194 (quoting *Tom Togs*, 318 N.C. at 367, 348 S.E.2d at 787). "This principle holds true where . . . defendants are alleged to have purposefully violated their contracts to engage in open competition with the plaintiff." *Id.* at 433-34, 428 S.E.2d at 194. *See also Cherry Bekaert*, 99 N.C. App. at 633, 394 S.E.2d at 656 (explaining that North Carolina has legitimate interest in establishment and operation of enterprises and trade within its borders and protection of its residents in making of contracts with persons and agents who enter the State for that purpose); *Ciba-Geigy Corp.*, 76 N.C. App. at 608, 334 S.E.2d at 93 (recognizing "powerful public interest of a forum state in protecting its citizens against out-of-state tortfeasors" where defendant committed fraud upon North Carolina corporation without physically coming into this State).

In addition, here, as in *Tom Togs*, 318 N.C. at 367-68, 348 S.E.2d at 787, the parties provided that North Carolina law would apply to any dispute. "While choice of law clauses are not determinative of personal jurisdiction, they express the intention of the parties and are a factor in determining whether minimum contacts exist and due process was met." *Tejal Vyas, LLC v. Carriage Park Ltd. P'ship*, 166 N.C. App. 34, 41, 600 S.E.2d 881, 887 (2004), *aff'd per curiam*, 359 N.C. 315, 608 S.E.2d 751 (2005).

As for the convenience of the parties, it appears that litigating in North Carolina would not be convenient for Caccuro, but, by the same token, litigation in another state would not be convenient for plaintiffs. The findings of fact do "not indicate that any one State would be more convenient to all of the parties and witnesses than another." *Banc of Am.*, 169 N.C. App. at 700, 611 S.E.2d at 186. *See Climatological Consulting Corp. v. Trattner*, 105 N.C. App. 669, 675, 414 S.E.2d 382, 385 (holding that although three of defendant's material witnesses were located in Washington, D.C., "this fact is counterbalanced by the fact that plaintiff's materials and offices are located here[,]" and "North Carolina is a convenient forum to determine the rights of the parties"), *disc. review denied*, 332 N.C. 343, 421 S.E.2d 145 (1992).

Finally, with respect to the fairness of this State's exercising jurisdiction, our courts have observed that "[i]t is well settled . . . 'that a defendant need not physically enter North Carolina in order for personal jurisdiction to arise.' " *Williamson Produce, Inc. v. Satcher*, 122 N.C. App. 589, 594, 471 S.E.2d 96, 99 (1996) (quoting *Better Bus. Forms, Inc. v. Davis*, 120 N.C. App. 498, 501, 462 S.E.2d 832, 834 (1995)). *See also Tom Togs*, 318 N.C. at 368, 348 S.E.2d at 787 ("Lack of action by defendant *in* a jurisdiction is not now fatal to the exercise of long-arm jurisdiction."). Moreover, Caccuro has not "pointed to any disparity between plaintiff[s] and [herself] which might render the exercise of personal jurisdiction over [her] unfair." *Id.*

We, therefore, hold that the contacts in this case rose to the level satisfying the constitutional minimum under the due process clause necessary in order to justify the exercise of personal jurisdiction over Caccuro. Accordingly, we affirm the order of the trial court denying Caccuro's motion to dismiss.

Affirmed.

Judges STEPHENS and McCULLOUGH concur.