IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1140

Filed 16 July 2024

Wake County, Nos. 19CVS2633-910

ELIZABETH A. MATA and THE MATA FAMILY, LLC, Plaintiffs,

v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION and NORTH CAROLINA TURNPIKE AUTHORITY, Defendants.

Appeal by defendants from judgment entered 6 June 2023 by Judge G. Bryan Collins, Jr. in Wake County Superior Court. Heard in the Court of Appeals 29 May 2024.

> *Cranfill Sumner LLP, by George B. Autry, Jr., Stephanie H. Autry, and Jeremy P. Hopkins, for the plaintiffs-appellees.*

> *Attorney General Joshua H. Stein, by Assistant Attorney General, Jeanne Washburn, for the defendants-appellants.*

> *Smith Anderson Blount Dorsett Mitchell & Jernigan, LLP, by William H. Moss, and The Banks Law Firm, PA, by Howard B. Rhodes for the defendants-appellants.*

TYSON, Judge.

The North Carolina Department of Transportation ("DOT") and the North Carolina Turnpike Authority ("TA") (collectively "Defendants") appeal from an order entered concluding: (1) Elizabeth A. Mata and The Mata Family, LLC (collectively "Plaintiffs") were entitled to seek just compensation for a temporary taking of their

property; (2) stating the measure of just compensation to be the difference between the rental value of the property immediately before the temporary taking and the rental value immediately after; and, (3) ordering a jury trial to determine just compensation. We affirm in part, reverse in part, and remand.

## I.    Background

Mata acquired a fee simple interest in approximately 94 acres of real property (the "Property") by deed recorded 1 June 1973 in the Wake County Registry at Book 2226, Page 548. The Property is located at 4300 Sunset Lake Road in Apex. Mata deeded a fee simple interest in the Property to the LLC on 20 November 2012, which is recorded in the Wake County Registry in Book 15025, Page 109.

DOT recorded projected outer loop corridor route maps in the Wake County Registry on 6 August 1996 pursuant to N.C. Gen. Stat. §§ 136-44.50-44.54 (2015) (the "Map Act"). The Supreme Court of North Carolina and this Court held the restrictions imposed upon affected property owners under Map Act were not an exercise of the states' police power and constituted a taking by eminent domain for which just compensation was due. *Kirby v. N.C. Dep't of Transp.*, 239 N.C. App. 345, 769 S.E.2d 218 (2015), *aff'd*, 368 N.C. 847, 786 S.E.2d 919 (2016). In response to our Supreme Court's holding in *Kirby*, the North Carolina General Assembly rescinded all Map Act corridors on 11 July 2016. *See* Sess. Law 2016-90. The General Assembly later repealed the entire Map Act statutory scheme. *See* Sess. Laws 2019-35, s.1.

Plaintiffs initiated this inverse condemnation action pursuant to N.C. Gen.

Stat. § 136-111 (2023) on 25 February 2019, asserting the Map Act restrictions encumbered their property from 6 August 1996 until 11 July 2016 and seeking compensation. DOT answered the complaint on 1 May 2019.

DOT filed a complaint for direct condemnation of a part of the Property to complete the southern I-540 loop project in Wake County on 7 April 2020. Defendants moved the superior court to hold a hearing pursuant to N.C. Gen. Stat. §§ 136-108 and 136-111 (2023) to determine all issues other than just compensation due.

Following this hearing, the trial court found and concluded, *inter alia*:

> The Plaintiff is entitled to just compensation, in such amount as may be established at the trial of this action, for the Defendants' taking of Plaintiff's property which restricted Plaintiff's rights to subdivide, develop, or improve Plaintiff's property.
>
> The duration of the taking of Plaintiff's property was from August 6, 1996[,] until July 11, 2016.
>
> The measure of just compensation shall be the difference in the value of the property immediately before and immediately after the taking, and the appraisers may use rental value to measure the value of the property during the duration of the taking so long as the appraisers ultimately employ the before and after value as appraisers do in cases involving temporary takings;

Defendants appeal.

## II.    Jurisdiction

### A. Interlocutory Appeal

An "appeal lies of right directly to the Court of Appeals . . . from any final judgment of a superior court." N.C. Gen. Stat. § 7A-27(b)(1) (2023). "A final judgment

is one which disposes of the cause[s of action] as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950) (citation omitted).

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Id.* at 362, 57 S.E.2d at 381. "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "This general prohibition against immediate appeal exists because there is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders." *Harris v. Matthews,* 361 N.C. 265, 269, 643 S.E.2d 566, 568 (2007) (citations and internal quotation marks omitted).

## B. Review Proper

Our Supreme Court has held two circumstances exist where a party is permitted to appeal an interlocutory order:

> First, a party is permitted to appeal from an interlocutory order when the trial court enters a final judgment as to one or more but fewer than all of the claims or parties and the trial court certifies in the judgment that there is no just reason to delay the appeal. [Rule 54(b) certification] Second, a party is permitted to appeal from an interlocutory order when the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the

merits.

*Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) (internal citations and quotation marks omitted).

Our Supreme Court has also "recognized that orders from a condemnation hearing concerning title and area taken are 'vital preliminary issues' that must be immediately appealed pursuant to N.C.G.S. § 1-277, which permits interlocutory appeal of determinations affecting substantial rights." *Dep't of Transp. v. Rowe*, 351 N.C. 172, 176, 521 S.E.2d 707, 709 (1999) (citation omitted).

"An easement is an interest in land[.]" *Borders v. Yarbrough*, 237 N.C. 540, 542, 75 S.E.2d 541, 542 (1953). The possible existence of a temporary negative easement, the basis upon which the trial court ordered a jury trial on damages, is a question affecting private property ownership, title, exclusivity and right of use, and the right to exclude others through trespass action.

"A title is not a piece of paper. It is an abstract concept which represents the legal system's conclusions as to how the interests in a parcel of realty are arranged and who owns them." *N.C. Dep't of Transp. v. Stagecoach Vill.*, 360 N.C. 46, 48, 619 S.E.2d 495, 496 (2005) (quoting William B. Stoebuck & Dale A. Whitman, *The Law of Property* § 10.12 (3d ed. 2000)). The trial court's order is subject to immediate review. *Rowe*, 351 N.C. at 176, 521 S.E.2d at 709.

### III.    Issues

Defendants argue the trial court erred by: (1) holding the restrictions on the parcel by recording a map under the Map Act is a temporary taking of a negative easement; (2) concluding the measure of damages was the rental value of the parcel; and, (3) finding the recording of a map under the Map Act constituted a temporary regulatory taking.

## IV.    Standard of Review

"[W]hen the trial court sits without a jury, the standard of review on appeal is whether . . . competent [] evidence support[s] the trial court's findings of fact and whether the conclusions of law were proper in light of such facts." *Anthony Marano Co. v. Jones*, 165 N.C. App. 266, 267-68, 598 S.E.2d 393, 395 (2004) (citation omitted). Unchallenged findings of fact are binding upon appeal. *See Lab. Corp. of Am. Holdings v. Caccuro*, 212 N.C. App. 564, 567, 712 S.E.2d 696, 699 (2011). "The trial court's conclusions of law are reviewed *de novo*[.]" *Strikeleather Realty & Invs. Co. v. Broadway*, 241 N.C. App. 152, 160, 772 S.E.2d 107, 113 (2015) (citation omitted).

## V.    Negative Easement

### A. Map Act

Under the Map Act's statutory plan:

> once NCDOT files a highway corridor map with the county register of deeds, the [Map] Act imposes certain restrictions upon property located within the corridor for an indefinite period of time. After a map corridor is filed, no building permit shall be issued for any building or structure or part thereof located within the transportation corridor, nor shall approval of a subdivision, as defined in

> G.S. 153A-335 and G.S. 160A-376, be granted with respect to property within the transportation corridor.

*Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847, 849, 786 S.E.2d 919, 921 (2016) (internal citation and quotation marks omitted).

Prior to the decisions in *Kirby*, the General Assembly had recognized the burden the Map Act had placed upon landowners, classified the properties subject to the corridor as a "special class" for *ad valorem* taxes, and to be "assessed at reduced rates of twenty percent (20%) of the appraised value for unimproved property and fifty percent (50%) of the appraised value for improved property." *Id.* (citations and quotation marks omitted). The DOT "is not obligated to build or complete the highway project" on the affected property. *Id.*

The General Assembly also provided a mechanism for property owners subject to corridors under the Map Act to seek relief:

> Owners whose properties are located within the highway corridor may seek administrative relief from these restrictions by applying for a building permit or subdivision plat approval, a variance, or an advanced acquisition of the property due to an imposed hardship. In the first instance, if after three years a property owner's application for a building permit or subdivision plat has not been approved, the entity that adopted the transportation corridor official map must either approve the application or initiate acquisition proceedings, or else the applicant may treat the real property as unencumbered. In the second instance, [a] variance may be granted upon a showing that: (1) Even with the tax benefits authorized by this Article, no reasonable return may be earned from the land; and (2) The requirements of G.S. 136-44.51 result in practical difficulties or unnecessary hardships. In the third

> instance, an advanced acquisition may be made upon establishing an undue hardship on the affected property owner. Property approved under the hardship category must be acquired within three years or the restrictions of the map shall be removed from the property. In all instances, however, the restrictions imposed upon the property remain indefinitely, absent affirmative action by the owner and either approval from the State or a certain lapse of time.

*Id.* at 849-50, 786 S.E.2d at 921-22 (citations and quotation marks omitted).

## B. Police Power

Defendants argue the trial court erred concluding the Map Act inverse condemnation was a temporary regulatory taking under the police power. Defendants assert the power granted to them under the Map Act was pursuant to the power of eminent domain.

Our Supreme Court long ago explained the distinction between the two in *Barnes v. N.C. State Highway Comm'n*:

> The question of what constitutes a taking is often interwoven with the question of whether a particular act is an exercise of the police power or of the power of eminent domain. If the act is a proper exercise of the police power, the constitutional provision that private property shall not be taken for public use, unless compensation is made, is not applicable. The state must compensate for property rights taken by eminent domain; damages resulting from the exercise of police power are noncompensable.

*Barnes v. N.C. State Highway Comm'n*, 257 N.C. 507, 514, 126 S.E.2d 732, 737-38 (1962) (citations and quotation marks omitted).

In examining the Map Act, our Supreme Court held in *Kirby* "[t]he language of

the Map Act plainly points to future condemnation of land in the development of corridor highway projects, thus requiring NCDOT to invoke eminent domain" and rests "squarely outside the scope of the police power." *Kirby*, 368 N.C. at 854-55, 786 S.E.2d at 925. Defendants' argument on this issue is well settled. Plaintiffs' claims arise under eminent domain. *Id.*

## C. Temporary Taking

Defendants argue the trial court erred in holding the Map Act taking was temporary in nature. Defendants cite to *Kirby* to support their proposition the takings were indefinite. Defendants correctly assert a central tenet of our Supreme Court's holding in *Kirby* to be the negative restraints placed upon properties subject to the Map Act, which limited the owners' ability to "improve, develop and subdivide" the property "coupled with their indefinite nature, constitute a taking" by eminent domain. *Id.* at 848, 786 S.E.2d at 921. The "indefinite period of time" referenced in *Kirby* continued until the DOT either released the property under the statute or filed a direct condemnation action to take title to the fee and complete the highway project. *Id.*

In response to our Supreme Court's decision in *Kirby*, the North Carolina General Assembly rescinded all Map Act corridors on 11 July 2016. *See* Sess. Law 2016-90. The termination of all Map Act corridors removed the negative restrictions as of 11 July 2016. At the time of Plaintiffs' inverse condemnation filing in 2019 and DOT's direct condemnation filing in 2020, there were no corridor restrictions on the

property.

The Map Act restrictions dates in effect were properly defined from DOT's recording the highway corridors on 6 August 1996 until the corridors were rescinded as of 11 July 2016. The taking was no longer "indefinite." The trial court correctly defined and concluded the dates above are the operative dates of Plaintiffs' alleged temporary taking. Defendants' argument is overruled.

### D. Measure of Damages

Defendants argue the trial court erred by imposing a measure of damages based on the rental value for the duration of the taking on 6 August 1996 until 11 July 2016. We agree.

Our Supreme Court has held: "The value of the loss of those rights is to be measured by calculating the value of the land before the corridor map was recorded and the value of the land afterward, *taking into account all pertinent factors*, including the restriction on each plaintiff's fundamental rights, as well as any effect of the reduced *ad valorem* taxes." *Chappell v. N.C. Dep't of Transp.*, 374 N.C. 273, 284, 841 S.E.2d 513, 522 (2020) (citation and quotation marks omitted) (emphasis supplied).

The damages are calculated based upon the diminution in value of Plaintiffs' property during said period. *Id.* The trial court erred in ordering a calculation based on "rental value," as the proper measure is any proven diminution in value during the relevant period "taking into account all pertinent factors" to include the reduction

in accessed *ad valorem* taxes Plaintiffs benefited from during the relevant temporary taking. *Id.*

## VI. Conclusion

The trial court correctly found the duration of the temporary taking occurred between 6 August 1996 until 11 July 2016. The order of the trial court concluding the duration of the temporary taking is affirmed.

The Map Act was a temporary taking under the power of eminent domain. *Kirby*, 368 N.C. at 854-56, 786 S.E.2d at 925. The proper measure of the damages to be proven by Plaintiff is the diminution in value on the date of the filing of the highway corridor on 6 August 1996 until 11 July 2016, "taking into account all pertinent factors" to include the reduction in assessed *ad valorem* taxes Plaintiffs benefitted from during the period of the relevant temporary taking. *Chappell*, 374 N.C. at 284, 841 S.E.2d at 522. The order of the trial court is reversed on the measure of damages Plaintiff must prove. The order is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. *It is so ordered.*

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judge CARPENTER concurs.

Judge MURPHY concurs in part and dissents in part by separate opinion.

No. COA23-1140– *Mata v N.C. Dep't of Transp.*

MURPHY, Judge, concurring in part and dissenting in part.

I concur in the Majority's opinion except with respect to Section V-D. For the reasons stated in Section D of the analysis in *Sanders v. N.C. Dep't of Transp.*, 2024 WL 442213, *10-11 (N.C. Ct. App. 2024) (unpublished), I would hold that the rental value of the property was the proper measure of damages, as our precedent requires in the case of a temporary taking.